662 So.2d 367 (1995)
Nancy GOLDMAN, Appellant,
v.
HALIFAX MEDICAL CENTER, INC., Appellee.
No. 94-1489.
District Court of Appeal of Florida, Fifth District.
September 15, 1995.
Rehearing Denied November 6, 1995.
Scott E. Gwartney, Eric S. Haug and Kenneth L. Connor of Connor & Associates, Tallahassee, for appellant.
Robert K. Rouse, Jr., of Smith, Schoder, Rouse & Bouck, P.A., Daytona Beach, for appellee.
Robert S. Glazier of Leesfield, Leighton, Rubio & Hillencamp, P.A., Miami, amicus curiae for Academy of Florida Trial Lawyers.
*368 PETERSON, Chief Judge.
Nancy Goldman appeals the dismissal of her complaint against Halifax Medical Center, Inc. (Halifax). She contends that the trial court erred in ordering her to comply with the medical malpractice notice requirements of Chapter 766, Florida Statutes (1993). The issue is whether a plaintiff suing a hospital, defined in the chapter as a health care provider, must comply with the presuit requirements of the chapter where the acts of alleged negligence are performed by an employee of the hospital during the course of providing medical treatment but where the employee who provided the care is not defined in the chapter as a "health care provider." We hold that the notice requirements are applicable and affirm the dismissal.
The gravamen of Goldman's complaint is that Halifax's operator of mammographic equipment, a radiologic technologist, negligently applied excessive pressure and caused one of her silicone breast implants to rupture. She also alleged that her injury was caused in part by the equipment not having been properly calibrated.
Goldman argues that it would be inherently illogical to make her comply with the presuit notice requirements of chapter 766 where the active tortfeasor, in this case the equipment operator, is not a health care provider according to any of the statutory definitions. Goldman argues that an illogical result would follow from Halifax's position and the trial court's determination:
According to the [hospital's] logic, if a suit is filed against a psychologist (who are not defined as health care providers) and is also filed against the hospital which employs the psychologist and is, therefore, vicariously liable for the conduct of the psychologist, different rules apply for each defendant. The hospital must be given notice of intent to initiate litigation, the claimant must provide a corroborating medical expert affidavit, and the hospital has the other various protections of chapter 766; the psychologist, on the other hand, is entitled to no such protections. The practical effect of two sets of rules is chaos. Because of the presuit requirements, there are certain rules governing the statute of limitations. If the limitations period is running, the claimant would be required to, simultaneously, send a notice of intent to initiate litigation to a hospital and actually initiate litigation by filing a lawsuit against the active tortfeasor (the psychologist for example). At the same time the claimant would be participating in informal discovery as part of the presuit requirements and also be engaged in formal discovery in the lawsuit. These dual tracks will exist even though the negligence at issue in each case is precisely the same. As a matter of public policy and in an effort to seek out the administration of justice [the hospital's] position has little to offer.
No case has posed precisely the issue presented by this case: Where the defendant is a health care provider and the negligence at issue is by a non-health care provider but arguably arose out of the rendering of medical care, does the defendant health care provider receive the benefits of the presuit screening requirements? We submit based on the case law stressing the crucial role of the active tortfeasor, and for the public policy reasons stated above, that the presuit requirements should not apply in these circumstances. If there is any doubt on this point  as we imagine there is  the rules of construction favor access to the courts and, therefore, favor the plaintiff's position. Weinstock v. Groth, 629 So.2d 835 (Fla. 1993).
The weakness in Goldman's example and argument is that, in cases alleging medical negligence, the legislature extended the privileges of chapter 766 to hospitals but not to psychologists or, for that matter, radiologic technologists. The complications that may arise when one defendant is defined in chapter 766 as a health care provider and another is not[1] are procedural in nature. The fact that the law may have created procedural difficulties is not justification for attempting *369 to construe the law in a manner which defeats the legislative intent that hospitals should be covered by chapter 766 where the alleged acts of negligence arose out of, or in the course of, medical treatment.
Goldman also notes that in Weinstock v. Groth, 629 So.2d 835, 838 (Fla. 1993), the Florida Supreme Court recently stated that a "narrow construction of the chapter 766 presuit notice requirement is in accord with the rule that restrictions on access to the court must be construed in a manner that favors access." The supreme court, however, also observed, "it is clear that the provisions of the Medical Malpractice Reform Act must be met in order to maintain an action against a health care provider." Weinstock, 629 So.2d at 836. Moreover, the court agreed with the second district's observation in NME Properties, Inc. v. McCullough, 590 So.2d 439 (Fla. 2d DCA 1991), that even a non-health care provider could have the benefits of the presuit notice requirements if that entity employs a health care provider who negligently renders medical care. Weinstock, 629 So.2d at 838.
The Weinstock court found that the presuit provisions of chapter 766 did not apply to a licensed clinical psychologist because psychologists are not included in the various chapter 766 definitions of health care provider. In the instant case, the entity being sued is a hospital, and sections 766.101(1)(b), 766.102(1) and 766.105(1)(b)(3) each define hospitals as health care providers. In the instant case, because the named defendant, Halifax, is a health care provider, and because it is alleged that Goldman was injured by a Halifax employee during the course of treatment for her health, there is no question in our minds that the presuit requirements of chapter 766 had to be met.
Goldman interprets McCullough to urge that the presuit requirements of chapter 766 should only apply where the "active" tortfeasor is a health care provider. Because the radiologic technologist who performed Goldman's mammogram is not defined as a health care provider, Goldman argues that, consistent with McCullough, she should not be required to follow the chapter 766 prerequisites.
In McCullough, a nursing home sought certiorari review of a trial court order holding that the plaintiff did not have to comply with the presuit requirements of chapter 766. The plaintiff alleged she was seriously injured due to the negligence of agents or employees of a nursing home. The complaint did not allege that any of the agents or employees involved were health care providers. In denying the writ, the court stated that the fact that nursing homes were not defined as health care providers in chapter 766, did not end the inquiry, because the nursing home could still be vicariously liable for a claim of medical malpractice arising out of "the rendering or failure to render, medical care or services." McCullough, 590 So.2d at 441 (quoting § 766.106(1)(a), Fla. Stat. (1989)). The court then determined that the case was not one of those cases where the "notice provisions may ... apply to a defendant that is not a health care provider," and stated, "[t]he simplest test to determine whether the notice provisions apply to a claim is whether the professional medical negligence standard of care described in section 766.102, Florida Statutes (1989) applies to the active tortfeasor." Id. (emphasis added).
Read in its entirety, McCullough actually runs contrary to Goldman's position. The opinion appears to suggest that the presuit requirements would have been applicable if the nursing home had been a health care provider, or if the employees or agents who allegedly injured the plaintiff had been health care providers. Goldman argues that McCullough stands for the proposition that presuit notice requirements only apply where the individual who actually commits the tort is a health care provider. McCullough, however, simply states that even where the employer is not a health care provider, it may still be afforded the protections of the statute if it is vicariously liable for an employee or agent who is a health care provider. Moreover, the court in McCullough seems to suggest that its analysis of vicarious liability would not have been necessary had the nursing home fit the statutory definition of a health care provider.
*370 In approving McCullough, the supreme court in Weinstock stated:
It is equally clear that under the doctrine of respondeat superior, an employer of a health care provider also may be a "prospective defendant" in a medical negligence action, even if the employer does not fall within the statutory definition of health care provider. As noted by the McCullough court, such a defendant may be vicariously liable under the professional medical negligence standard of care set forth in section 766.102(1) when its agent or employee, who is a health care provider, negligently renders medical care or services. 590 So.2d at 441. Thus we agree with the McCullough court that the proper test for determining whether a defendant is entitled to notice under section 766.106(2) is whether the defendant is directly or vicariously liable under the medical negligence standard of care set forth in section 766.102(1).
Weinstock, 629 So.2d at 838.
We believe that Goldman's interpretation of McCullough  that the "active" tortfeasor must be a health care provider in order for chapter 766 to apply  is incorrect. Section 766.102(1) provides:
In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider defined in s. 768.50(2)(b), the claimant [must show] ... the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider.
The statute states that a medical negligence claim must be based on the negligent acts of a health care provider. See also § 95.11(4)(b), Fla. Stat. (1993); Stackhouse v. Emerson, 611 So.2d 1365 (Fla. 5th DCA 1993). But a hospital, unlike a doctor, cannot "negligently" perform surgery. The complaint in the instant case alleges that the hospital is vicariously liable for the acts of its radiologic technologist and that the hospital was itself negligent for not having the mammography equipment certified or properly calibrated. Ultimately, however, a hospital, even in providing improperly calibrated equipment, is acting through its agents and employees.
We conclude that the legislature, in enacting section 766.102, and the Medical Malpractice Reform Act in general, intended that the negligence of the hospital's agents acting in the course of their employment should be treated as the negligence of the hospital, and that the chapter's presuit requirements should be complied with where an agent of the hospital provides negligent medical care. To conclude otherwise would lead to the irrational result that a hospital or other health care providing employer not directly negligent is subject to chapter 766 conditions only when it employs another health care provider who causes the injury while performing health care. Just as non-health care employers are entitled to the presuit conditions where their health care employees have allegedly provided negligent medical care while in the course of their employment, McCullough, so too are health care providing employers entitled to these provisions when their health care or non-health care employees commit such acts or omissions.
Relying primarily on Broadway v. Bay Hospital, Inc., 638 So.2d 176 (Fla. 1st DCA 1994), Goldman argues that the failure to calibrate properly the mammography equipment is not medical malpractice. In Broadway, the court found that the complaint did not sound in medical negligence where the plaintiff alleged she was injured when her hospital bed collapsed. The court held that the facial allegations clearly stated a claim for failure to warn of a dangerous condition or failure to maintain equipment, and not for breach of a professional medical standard. Goldman's claim, that an improperly calibrated machine that was used on her partly caused her injury, is not unlike a claim that one was injured when a doctor used an unclean scalpel, a claim which would clearly fall within the realm of providing medical care. The claim in the instant case is more like the claim made in Neilinger v. Baptist Hospital of Miami, Inc., 460 So.2d 564 (Fla. 3d DCA 1984), than the one made in Broadway. In Neilinger, the court held that a hospital was *371 performing medical services when a patient slipped and fell on a pool of amniotic fluid while descending from an examination table under the direction and care of hospital employees. Here, as in Neilinger, the claim arises "out of the rendering of medical care or services" because the patient was injured as a direct result of receiving medical care or treatment by a hospital employee.
The trial court properly dismissed Goldman's complaint for failure to comply with the presuit notice provisions of chapter 766.
AFFIRMED.
COBB and HARRIS, JJ., concur.
NOTES
[1] Goldman concedes that in her case, no such possible complication arises because Halifax is a public hospital and its radiologic technologist is immune from suit for acts of simple negligence committed in the course of that employment. See § 768.28(9), Fla. Stat. (1993).