MORRIS, Judge.
Petitioners seek certiorari review of an order denying their motions to dismiss a circuit court action filed against the petitioners by Alvie Mosley, as personal representative of the estate of Mable Mosley (the Estate). We deny the petition for the reasons discussed below.
Petitioners are a hospital, GalenCare, Inc., d/b/a Brandon Regional Hospital; HCA, Inc. (HCA), the parent company of the Hospital; and seven pharmacists (the Pharmacists) employed by the Hospital. They are defendants in an action filed by the Estate below. The Estate’s complaint alleges that Mable Mosley died while in the care of the Hospital due to an overdose of narcotics administered to her while in the Hospital. The complaint alleged negligence against HCA, negligence against the Pharmacists, and a third-party spoliation claim against the Hospital.
Petitioners filed motions to dismiss, alleging that the Estate failed to comply with the medical malpractice presuit notice requirements in chapter 766, Florida Statutes (2008). After a nonevidentiary hearing, the trial court denied the motions to dismiss, concluding that “the three Counts alleged in the Complaint are not medical malpractice claims subject to the presuit notice and investigation requirements of Chapter 766.”
I. Jurisdiction
This court may review by certiorari a nonfinal order that allows a plaintiff to proceed with an action without complying with the presuit notice requirements of chapter 766. See Corbo v. Garcia, 949 So.2d 366, 368 (Fla. 2d DCA 2007). Certiorari is appropriate in this category of cases because “[t]he statutes requiring presuit notice and screening ‘cannot be meaningfully enforced postjudgment because the purpose of the presuit screening is to avoid the filing of the lawsuit in the first instance.’” Fassy v. Crowley, 884 So.2d 359, 363 (Fla. 2d DCA 2004) (quoting Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 649 (Fla. 2d DCA 1995)). The purpose of the presuit requirements is to save costs by encouraging settlement. See id. In order for cer-tiorari relief to be granted, the trial court’s order must depart from the essential requirements of the law. Oken v. Williams, 23 So.3d 140, 143 (Fla. 1st DCA 2009).
II. The Estate’s claim against the Pharmacists
Petitioners claim that the Pharmacists fall within the ambit of chapter 766 because they are employees of a health care provider, i.e., the Hospital. Petitioners contend that in order to be licensed as a hospital, the Hospital is required to have a pharmacy department. Petitioners argue that the Pharmacists in this case are a *141 necessary, indispensable part of the Hospital.
The presuit notice requirement is set forth in section 766.106. “After completion of presuit investigation pursuant to s. 766.208(2) and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant ... of intent to initiate litigation for medical negligence.” § 766.106(2)(a). “[T]he proper test for determining whether a defendant is entitled to notice under section 766.106(2) is whether the defendant is directly or vicariously liable under the medical negligence standard of care set forth in section 766.102(1).” Weinstock v. Groth, 629 So.2d 885, 838 (Fla.1993). The standard for recovery in a medical negligence case is set forth in section 766.102(1):
In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in - s. 766.202(4-), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider.
(Emphasis added.) Under section 766.202(4), a health care provider is
any hospital, ambulatory surgical center, or mobile surgical facility as defined and licensed under chapter 395; a birth center licensed under chapter 383; any person licensed under chapter 458, chapter 459, chapter 460, chapter 461, chapter 462, chapter 463, part I of chapter 464, chapter 466, chapter 467, or chapter 486; a clinical lab licensed under chapter 483; a health maintenance organization certificated under part I of chapter 641; a blood bank; a plasma center; an industrial clinic; a renal dialysis facility; or a professional association partnership, corporation, joint venture, or other association for professional activity by health care providers.
Pharmacists are licensed under chapter 465, Florida Statutes (2008), which is not included in the list above. Because the legislature specifically referenced certain groups of licensed professionals and the particular chapters under which they are licensed, we must conclude that the legislature specifically intended to exclude pharmacists licensed under chapter 465 from the definition of health care provider. See Sova Drugs, Inc. v. Barnes, 661 So.2d 393, 395 (Fla. 5th DCA 1995) (holding that pharmacist was not included in definition of health care provider who would be entitled to presuit notice under chapter 766). Accordingly, pharmacists licensed under chapter 465 are not health care providers entitled to presuit notice under section 766.106(2).
Petitioners claim that this case is distinguishable from Sova Drugs, Inc. because the pharmacy in Sova Drugs, Inc. was not a hospital pharmacy. They claim that hospitals are required to have pharmacy departments and that pharmacists are therefore essential employees. This distinction has no bearing on the legal conclusions under the facts of this case because the statute clearly excludes pharmacists from the definition of a health care provider. And as explained below, no other circumstances exist that could extend the coverage of the statutes at issue to the Pharmacists in this case.
Petitioners rely on two cases, Goldman v. Halifax Medical Center, Inc., 662 So.2d 367 (Fla. 5th DCA 1995), and Puentes v. Tenet Hialeah Healthsystem, 843 So.2d 356 (Fla. 3d DCA 2003), for their argument that the Pharmacists were entitled to presuit notice because they are employees of a health care provider under chapter *142 766. But those cases cited by petitioners are factually distinguishable because it is undisputed in those cases that the plaintiffs were suing the hospitals as health care providers for medical malpractice and that the plaintiffs were alleging, in part, that the hospitals were vicariously liable for the actions of their employees. See Goldman, 662 So.2d at 370 (noting that the “complaint in the instant case alleges that the hospital is vicariously liable for the acts of its [nonhealth care provider]”); Puentes, 843 So.2d at 357-58. Here, the Estate did not sue the Hospital for medical negligence and did not allege that the Hospital was vicariously liable for the Pharmacists’ actions. Therefore, Goldman and Puentes do not support the argument that the Pharmacists were entitled to their own presuit notice.
Petitioners contend that even if the Pharmacists (and HCA) are not health care providers under chapter 766, they are still entitled to presuit notice as “prospective defendant[s]” under section 766.106(2)(a) and Florida Rule of Civil Procedure 1.650(b)(1) by virtue of the fact that the Hospital was entitled to presuit notice. Even if the Hospital was entitled to pre-suit notice (which we discuss below), the Pharmacists and HCA would not be so entitled. As the supreme court noted in Weinstoek, 629 So.2d at 837-38, “it is only logical that the term [prospective defendant] refers to defendants in a medical malpractice action who are health care providers as defined in chapter 766 or who, although not expressly included within that class, are vicariously liable for the acts of a health care provider.” As discussed above, the Pharmacists do not fall within the definition of a health care provider, and it is undisputed that HCA is not a health care provider. In addition, it has not been alleged that the Pharmacists or HCA are vicariously liable in this case for the acts of a health care provider. Therefore, this argument fails.
The language of sections 766.102(1) and 766.202(4) is unambiguous, and our conclusion regarding the Pharmacists is consistent with our obligation to narrowly construe statutes that restrict access to the courts. See Weinstock, 629 So.2d at 838; Dirga v. Butler, 39 So.3d 388, 390 (Fla. 1st DCA2010).
III. The Estate’s claim against the Hospital
Petitioners next claim that the Hospital was entitled to presuit notice because it is a health care provider under chapter 766 and the claim against the Hospital arose out of the rendering of medical care or services. See § 766.106(l)(a) (“ ‘Claim for medical negligence’ or ‘claim for medical malpractice’ means a claim[] arising out of the rendering of, or the failure to render, medical care or services.”). Petitioners claim that the Estate is alleging that the Hospital is liable under the medical malpractice standard of care, thereby triggering the presuit notice requirements of chapter 766.
It is undisputed that the Hospital is a health care provider under the statute. But the Estate’s claim against the Hospital is not a claim for medical negligence or malpractice because it did not arise out of the rendering of, or the failure to render, medical care or services by the Hospital. See § 766.106(l)(a). It is a claim for spoliation arising out of the Hospital’s failure to maintain the proper records that could support a claim by the Estate against the other defendants who are not health care providers. See Hagopian v. Publix Supermarkets, Inc., 788 So.2d 1088, 1091 (Fla. 4th DCA 2001) (setting forth the six elements for a claim of spoliation, also known as a claim for the negligent destruction of evidence). In addition, the Estate did not allege that the Hospital is liable under the *143 medical negligence standard, which is necessary to invoke the presuit notice requirement of section 766.106. See Weinstock, 629 So.2d at 838. Here, the Estate alleged that the Hospital breached a standard of care in failing to properly maintain records, but the Estate did not allege that that breach caused the “death or personal injury of any person.” § 766.102(1). Therefore, the standard for medical negligence was not invoked as to any direct liability by the Hospital. Also, the standard for medical negligence was not invoked as to any vicarious liability by the Hospital because the Estate did not allege that the Hospital was vicariously liable as “an employer of a health care provider,” see Weinstock, 629 So.2d at 838, and the Pharmacists are not health care providers subject to the statute. See NME Props., Inc. v. McCullough, 590 So.2d 439, 441 (Fla. 2d DCA 1991) (focusing on the allegations in the complaint in determining whether the medical negligence presuit notice requirements apply).
IV. The Estate’s claim against HCA
Last, petitioners claim that HCA was independently entitled to presuit notice of the Estate’s claim because the Estate essentially alleged that HCA was responsible for the duty of care owed by the Hospital, which is HCA’s subsidiary and a health care provider. This argument is without merit because the Estate did not allege that HCA was liable based on any duty of care owed by the Hospital or that HCA was vicariously liable for the actions of the Hospital or the Pharmacists. The Estate alleged that HCA itself owed a duty to Ms. Mosley.[1]
The Estate’s claim against HCA is not based on any claim that a health care provider was negligent in the provision of medical care and services. The count against HCA alleged that HCA negligently “provided, designed, and maintained the narcotic delivery system” and that such negligence directly and proximately resulted in the death of Ms. Mosley. As noted by petitioners, “[a] parent corporation and its wholly-owned subsidiary are separate and distinct legal entities” and “[a]s a separate legal entity, a parent corporation is not liable for torts committed by its subsidiary and cannot exercise the rights of its subsidiary.” Am. Int’l Group, Inc. v. Cornerstone Businesses, Inc., 872 So.2d 333, 336 (Fla. 2d DCA 2004). In order to succeed on its claim against HCA, the Estate will have to prove that HCA owed a duty to Ms. Mosley separate from that owed by the Hospital. This goes to the merits of the Estate’s claim against HCA and not to whether HCA was entitled to presuit notice under chapter 766.
In HGA’s motion to dismiss and at the hearing on the motions to dismiss, HCA argued two points: (1) that the complaint should be dismissed for failure to comply with the presuit notice requirements and (2) that the complaint should be dismissed as to HCA because HCA lacked a duty to Ms. Mosley. When denying the motion to dismiss on the presuit notice issue, the trial court did not rule on HCA’s second argument that the complaint should be dismissed because HCA lacked an independent duty to Ms. Mosley.
Even if the count against HCA is dependent upon the alleged negligence of the Pharmacists in using the allegedly negligent narcotic delivery system, the Pharmacists are not health care providers subject to the provisions of chapter 766 and therefore those provisions would not extend to HCA on.the theory of vicarious liability. Cf. McCullough, 590 So.2d at 441 (noting *144 that a nonhealth care provider may be entitled to presuit notice because it is vicariously liable for employees or agents that are health care providers).
V. Conclusion
The Estate carefully avoided invoking the presuit notice requirements of section 766.102 when fashioning its complaint against petitioners. But there is nothing in the statutes or the interpreting case law which prevents the Estate from employing such a strategy. Petitioners have not shown that the trial court departed from the essential requirements of the law in denying petitioners’ motions to dismiss the Estate’s complaint for failure to comply with the presuit notice requirements of chapter 766. Accordingly, we deny the petition for writ of certiorari.
Petition for writ of certiorari denied.
WALLACE and KHOUZAM, JJ., Concur.

. It appears that the Estate’s claim against HCA is based on HCA’s representations that it has an exceptional narcotic delivery system in approximately 100 of HCA’s hospitals.