COHEN, J.
In this petition for writ of certiorari, we are called upon to review whether the Florida Medical Malpractice Act’s (“FMMA”)[1] presuit notice requirements are applicable to the facts of this case. The petitioner, Holmes Regional Medical Center, Inc. (“HRMC”), seeks certiorari review of a trial court order denying its motion to dismiss Robert and Edith Dumi-gan’s (“the Dumigans”) complaint for negligence. In its petition, HRMC argues that the trial court departed from the essential requirements of the law when it denied its motion to dismiss, because: (1) the allegations of the complaint arise out of the rendering of, or the failure to render, medical care or services; (2) to prevail on their claims, the Dumigans would be required to address the medical negligence standard of care found in section 766.102(7), Florida Statutes (2013); and (3) the trial court’s finding that the Dumi-gans’ claims against HRMC are for product liability and not medical negligence contradicts well-established Florida law regarding strict liability and healthcare providers. In short, HRMC asserts that, despite being characterized as a cause of action for product liability and negligence, the facts alleged in the complaint set forth a medical malpractice claim subject to the presuit requirements.[2] We disagree.
To obtain relief via writ of certio-rari, a petitioner must establish: (1) a departure from the essential requirements of the law; (2) a consequent material injury for the balance of the trial; and (3) the absence of an adequate remedy on appeal. Allan & Conrad, Inc. v. Univ. of Cent. Fla., 961 So.2d 1083, 1087 (Fla. 5th DCA 2007) (citing Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987)). The second and third prongs of this three-part standard are often combined into the concept of “irreparable harm,” and they are jurisdictional. See Citizens Prop. Ins. Corp. v. San Perdido Ass’n, 104 So.3d 344, 351 (Fla.2012) (citing Allstate Ins. Co. v. Boecher, 733 So.2d 993, 999 (Fla.1999)). Therefore, an appellate court must find irreparable harm, i.e., a material injury that cannot be remedied on appeal, before it may even consider whether there has been a departure from the essential requirements of the law. See San Perdido Ass’n, 104 So.3d at 351 (citing Williams v. Oken, 62 So.3d 1129, 1132-33 (Fla.2011)).
Although orders denying motions to dismiss are generally not reviewable by writ of certiorari, Florida courts have created an. exception and permit certiorari review when the presuit requirements of the FMMA are at issue. Omni Healthcare, Inc. v. Moser, 106 So.3d 474, 475 (Fla. 5th DCA 2012). This exception is based on the purpose of the FMMA: to facilitate settlement and avoid baseless claims. Id. When a plaintiff files a medical malpractice action but does not satisfy the presuit notice requirements set forth in section 766.203(2), the defendant suffers a material injury that cannot be remedied in a postjudgment appeal. Rell v. McCulla, 101 So.3d 878, 880-81 (Fla. 2d DCA 2012) (citing Corbo v. Garcia, 949 So.2d 366, 368 (Fla. 2d DCA 2007)). Therefore, irreparable harm occurs when a court improperly denies a motion to dismiss for failure to follow presuit requirements because the *1285 defendant loses the cost-saving benefits that the FMMA was intended to create. Palms W. Hosp. Ltd. P’ship v. Burns, 83 So.3d 785, 788 (Fla. 4th DCA 2011) (citing Dr. Navarro’s Vein Ctr. of the Palm Beach, Inc. v. Miller, 22 So.3d 776, 778-79 (Fla. 4th DCA 2009)).
Initially, we must address the Du-migans’ claim that HRMC failed to preserve these issues for appeal. HRMC’s motion to dismiss cited virtually no case law to assist the trial court in making its determination. HRMC did not provide any real analysis or case law until it filed what it labeled as “Defendant, [HRMC’s] Reply to [the Dumigans’] Response to [HRMC’s] Motion to Dismiss.” Despite the deficiencies in the initial motion to dismiss, we find that the argument was sufficiently raised to put both the Dumi-gans and the trial court on notice of what issues were involved.
On the merits of the case, we agree with HRMC that merely labeling a cause of action as either product liability or simple negligence is not dispositive. See Moser, 106 So.3d at 475 (finding that although plaintiff attempted to allege a claim in simple negligence, it was clear that the claim sounded in medical malpractice); S. Miami Hosp., Inc. v. Perez, 38 So.3d 809, 811-12 (Fla. 3d DCA 2010) (finding that plaintiffs premises liability claim was a “[disingenuous attempt] to avoid the [pre-suit notice] requirements of Chapter 766 by characterizing the [d]eeedent as a mere ‘business invitee’” because the claim was essentially a medical malpractice action); Martinez v. Lifemark Hosp. of Fla., Inc., 608 So.2d 855, 856-57 (Fla. 3d DCA 1992) (finding that the. case should be handled under the FMMA because plaintiffs asserted claims of negligent hiring and retention, fraud and misrepresentation, and intentional tort were necessarily and inextricably connected to negligent medical treatment).
In determining whether an action sounds in medical malpractice, courts must — on a case-by-case basis — examine the allegations in the complaint and accept them as true. S. Baptist Hosp. of Fla., Inc. v. Ashe, 948 So.2d 889, 890 (Fla. 1st DCA 2007) (citing Foshee v. Health Mgmt. Assocs., 675 So.2d 957, 959 (Fla. 5th DCA 1996)); see also Stackhouse v. Emerson, 611 So.2d 1365, 1366 (Fla. 5th DCA 1993). And because the presuit requirements of the FMMA limit the constitutional right of access to courts, they must be narrowly construed. See Acosta v. HealthSpring of Fla., Inc., 118 So.3d 246, 248 (Fla. 3d DCA 2013) (citing Pierrot v. Osceola Mental Health, Inc., 106 So.3d 491, 493 (Fla. 5th DCA 2013)).[3]
Here, Mr. Dumigan was admitted to HRMC for cardiac bypass surgery; he left a double amputee. During the course of surgery, Mr. Dumigan was administered contaminated heparin, which caused him to develop a severe bacterial infection that ultimately led to the amputation of his left leg and right foot. The Dumigans’ complaint alleges that the heparin supplier had issued a recall of its contaminated product prior to Mr. Dumigan’s surgery, but that HRMC failed to have adequate procedures in place to respond to the recall:
Despite the fact that [the manufacturer’s] contaminated products had been recalled months earlier, [HRMC] failed to promptly remove and return all of its supplies of recalled ... heparin products at the time of the recall. Instead, [HRMC] negligently failed to conduct an *1286 adequate review and removal process for the ..recalled heparin. At the time of Mr. Dumigan’s operation, more than four months after [the manufacturer’s] recall ... recalled heparin products were still in stock at [HRMC].
Notably, the healthcare workers, including the doctors who participated in the bypass surgery, are not defendants in the lawsuit. The Dumigans do not allege that the administration of heparin as part of the surgical procedure was below the standard of care. Nor do they allege that the healthcare workers knew or had reason to know that the heparin was tainted. Moreover, the Dumigans’ suit against HRMC is not based upon HRMC’s vicarious liability for the negligence of its healthcare workers. Rather, it focuses on the administrative policies and actions of HRMC in responding to the recall of the contaminated heparin.
It is axiomatic that the mere fact that a wrongful act occurs in a medical setting does not automatically transform the contested action into one that sounds in medical malpractice; the wrongful act must be “directly related to the improper application of medical services and the use of professional judgment or skill.” Corbo, 949 So.2d at 368 (quoting Lynn v. Mount Sinai Med. Ctr., Inc., 692 So.2d 1002, 1003 (Fla. 3d DCA 1997)). This Court has previously held that “[t]he primary test for whether a claim is one for medical malpractice is whether the claim relies on the application of the medical malpractice standard of care.”[4] Pierrot, 106 So.3d at 493 (citing Weinstock v. Groth, 629 So.2d 835, 838 (Fla.1993); Joseph v. Univ. Behavioral LLC., 71 So.3d 913, 917 (Fla. 5th DCA 2011); GalenCare, Inc. v. Mosley, 59 So.3d 138, 141-43 (Fla. 2d DCA 2011)).
Application of this standard is not always easy or consistent. The cases range from the obvious — such as an incorrect diagnosis or an error that occurs during treatment or surgery — to the more difficult — such as the condition of the premises or the use of tainted materials during a medical procedure. As to the latter category of cases, courts have not applied the standard uniformly. Still, some guiding principles can be gleaned from the case law.
Typically, if the negligent act occurs during the course of the medical procedure, courts find that the complaint sounds in medical malpractice. For example, in Corbo, 949 So.2d at 368, a patient was burned by an improperly calibrated machine during the course of physical therapy treatment. The patient filed suit, alleging simple negligence, but the physical therapy provider argued that the claim sounded in medical malpractice. Id. In finding that the ease sounded in medical malpractice, the court reasoned that “the injury alleged by [the patient] was directly inflicted by the medical care-that is, physical therapy treatment-provided to her by the petitioner. [The patient’s] claim thus *1287 arose ‘out of the rendering of ... medical care or services.’ ” Id. (citing § 766.106(1)(a), Fla. Stat.). In other words, the alleged “wrongful act” was “directly related to the improper application of medical services ... and the use of professional judgment or skill.” Id. (citing Lynn, 692 So.2d at 1003). Significantly, the court in Corbo distinguished a previous case, Mobley v. Hirschberg, P.A., 915 So.2d 217 (Fla. 4th DCA 2005), because in that case, the alleged wrongful act occurred in preparation for a medical procedure and did not involve the use of professional judgment or skill. Id. at 369-70.
In Goldman v. Halifax Medical Center, 662 So.2d 367 (Fla. 5th DCA 1995), the plaintiff alleged that an operator of mam-mographic equipment negligently applied excessive pressure causing the rupture of the plaintiffs silicone breast implant. Like in Corbo, she also claimed that her injury was caused in part by the improper calibration of the equipment. This Court found that the action was subject to the FMMA’s presuit requirements because the patient “was injured as a direct result of receiving medical care or treatment by a hospital employee.” Id. at 371.[5]
Additionally, courts have consistently found that cases that do not involve professional medical judgment or skill sound in ordinary negligence. See, e.g., Joseph, 71 So.3d at 919-20 (finding that the administrative decision not to separate patients did not involve medical judgment and did not sound in medical malpractice); Quintanilla v. Coral Gables Hosp., Inc., 941 So.2d 468, 468-69 (Fla. 3d DCA 2006) (finding that the spilling of hot tea on a patient sounded in ordinary negligence); Lynn, 692 So.2d at 1003 (finding that the improper collection and labeling of a urine specimen taken for purposes of drug testing sounded in ordinary negligence); Buchanan v. Lieberman, M.D., 526 So.2d 969, 972 (Fla. 5th DCA 1988) (finding that a treating physician’s improper touching did not sound in medical malpractice).
Out-of-state cases involving the use of tainted materials during medical procedures provide further instruction on the distinction between medical malpractice and ordinary negligence.[6] For example, in Weiner v. Lenox Hill Hospital, 88 N.Y.2d 784, 650 N.Y.S.2d 629, 673 N.E.2d 914 (1996), a patient sought treatment at a hospital for a small bowel obstruction. During the course of the treatment, numerous blood transfusions were administered. Id. 650 N.Y.S.2d 629, 673 N.E.2d at 915. At least one was contaminated with HIV, which ultimately led to the patient’s death from AIDS-related illnesses. Id. The patient’s estate brought suit challenging the hospital’s “failure to adopt and prescribe proper procedures in screening and collecting blood.” Id. 650 N.Y.S.2d 629, 673 N.E.2d at 916. The hospital raised the medical malpractice statute of limitations as a defense. Id. 650 N.Y.S.2d 629, 673 N.E.2d at 915. The New York Court of Appeals, like Florida courts, reasoned that not every act that occurs in a hospital involves the rendition of medical care or involves professional medical judgment. Id. at 787-88, 650 N.Y.S.2d 629, 673 N.E.2d 914 (citing Bleiler v. Bodnar, 65 N.Y.2d 65, 73, 489 N.Y.S.2d 885, 479 *1288 N.E.2d 230 (N.Y.1985)). The court held that “a claim sounds in medical malpractice when the challenged conduct ‘constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.’ ” Id. at 788, 650 N.Y.S.2d 629, 673 N.E.2d 914 (quoting Bleiler, 65 N.Y.2d at 72, 489 N.Y.S.2d 885, 479 N.E.2d 230). Ultimately, in rejecting the applicability of the medical malpractice statute of limitations, the court noted that the core issue in the case did not implicate questions of medical competence or judgment but turned on the hospital’s procedures. Id.; see also Estate of Doe v. Vanderbilt Univ., Inc., 958 S.W.2d 117 (Tenn.Ct.App.1997).
Similarly, in Turner v. Steriltek, Inc., No. M2006-01816-COA-R3-CV, 2007 WL 4523157, at *8 (Tenn.Ct.App. Dec. 20, 2007), a Tennessee appellate court addressed this issue in the context of improperly sterilized instruments. In Turner, physicians were performing surgery on the plaintiffs daughter. Id. at *1. During surgery, the physicians were notified that the surgical instruments were contaminated. Id. Plaintiffs father filed suit against the hospital and alleged that the hospital was negligent in failing to have proper procedures in place to ensure that instruments were properly sterilized. Id. at *3. On appeal, the court held that the claim did not sound in medical malpractice because the administrative decision was made well before the medical procedure, and the decision did not involve medical judgment. Id. at *8.[7]
In this case, no medical judgment or skill was exercised by HRMC, and the allegedly wrongful act occurred months before Mr. Dumigan’s surgery. Moreover, HRMC’s decision to administer heparin is not the gravamen of the complaint. Indeed, the failure to administer a blood thinner during the procedure would undoubtedly fall below the acceptable standard of care. Rather, the allegedly wrongful act was HRMC’s administrative failure to properly remove heparin from its inventory, which it knew or should have known had been recalled. This alleged failure of administrative policy is not unlike the failure of a grocery store to remove a tainted product after having been notified of a recall. Thus, HRMC’s allegedly wrongful act is not unique to the hospital setting and does not involve professional medical judgment or skill. For these reasons, the claim sounds in ordinary negligence rather than medical malpractice, and the FMMA’s presuit notice requirements do not apply.
For the reasons expressed, we deny the petition for writ of certiorari.
PETITION DENIED.
SAWAYA and ORFINGER, JJ., concur.

. §§ 766.101-.316, Fla. Stat. (2013).

. There is no dispute that the Dumigans did not provide presuit notice.

. We do not consider the merits of any of the causes of action. Instead, we address only the issue of presuit notice.

. The medical malpractice standard of care is set forth in section 766.102(1), which provides:
In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 766.202(4), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.
§ 766.102(1), Fla. Stat. (2013).

. The issue raised in Goldman was whether the presuit screening requirements applied to the medical center when the employee performing the allegedly negligent acts was not a healthcare provider as defined by the statute. Id. at 368. That question was answered affirmatively. Id. at 370.

. We recognize, however, that each state’s statute is different, which can lead to different results.

. Summary judgments were affirmed, though, on malpractice claims against the treating physicians. Id. at *6.