WOLF, J.,
dissenting.
Shands Hospital files a petition for writ of certiorari asserting that the trial court erred in denying its motion to dismiss because the plaintiffs failed to allege that they followed the presuit notice requirements contained in chapter 766, Florida Statutes (Medical Malpractice Act). The trial court correctly determined, in ruling" on the motion to dismiss, it was required to take the allegations of the complaint as true and that the allegations' therein, leaving a pass and key unattended, established simple carelessness unrelated to diagnosis and treatment. Therefore, as alleged in the complaint, the case did not constitute one for medical negligence. See St. ■ Jo *342 seph’s Hosp., Inc. v. Cintron, 998 So.2d 1192, 1194 (Fla. 2d DCA 2009).

Standard of Revieiv

The appropriate certiorari review of the trial court’s decision to deny the motion to dismiss is to review the four corners of the complaint to determine whether the trial court departed from the essential requirements of law. St. Joseph’s Hosp., 998 So.2d 1192; Lakeland Reg’l Med. Ctr., Inc. v. Allen, 944 So.2d 541 (Fla. 2d DCA 2006). The standard which has been defined in cases involving certiorari review of denial of a motion to dismiss in medical malpractice actions, as in other certiorari reviews, is “ ‘a violation of clearly established principle of law resulting in a miscarriage of justice.’ ” See Nieves v. Viera, 150 So.3d 1236, 1238 (Fla. 3d DCA 2014) (quoting Williams v. Oken, 62 So.3d 1129, 1132 (Fla.2011)).

Complaint

The complaint in this case states in pertinent part:
8. Ashley Lawson (DOB 6/17/84) was admitted to [the Hospital] on November 1, 2012 as a psychiatric patient with a history of psychiatric illness, drug abuse, impulsive behavior, and multiple suicide attempts.
9. For her own safety, [she] was transferred to [the Hospital’s] inpatient locked unit.
10. The [Hospital] owed a legal duty to provide adequate security for [her] and other psychiatric patients who resided in the locked unit.
11. Notwithstanding the legal duty owed to Ashley Lawson, the Defendant breached its duty when its employee negligently left her keys and badge unattended and kept them unattended for an unreasonable period of time which allowed Ashley Lawson to exit the locked unit with said keys and badge.
12. At the time the employee negligently left her keys and badge unattended, the employee was not rendering medical or psychiatric care to Ashley Lawson.
13. At the time the employee negligently left her keys and badge unattended, she was acting in the scope of her employment.
14. As a direct and proximate result of the Defendant’s breach of its duty, Ashley Lawson impulsively eloped and made her way to the interstate in a confused condition and without any money, cell phone, or warm clothing. She was, then, struck by a tractor trailer, resulting in her death on January 23, 2012.
(Emphasis added).
The key assertions are:
1. The nature of the negligent act. The keys and badge were left unattended, an act not involving medical judgement.
2. The background circumstances at the time of the incident. Diagnosis or treatment was not taking place.
3. The employee’s role or job duties are not identified in the complaint. In fact, based on what is alleged in the complaint, it could have involved staff with no relationship to medical diagnosis or treatment.
4. The standard of care. The failure to provide adequate security in a lock down facility. A standard that this court has stated does not necessarily involve medical negligence. See Robinson v. West Florida Regional Medical Center, 675 So.2d 226 (Fla. 1st DCA 1996).

Trial Court’s Ruling

At the hearing on the motion to dismiss, the trial-court ruled as follows:
Okay. Well, I’m here at the complaint stage and a motion addressed to the *343 complaint and I have to take the allegations of the complaint as true for the purposes of this motion anyway, and ask myself basically, under these circumstances, whether the Plaintiff has pled themselves out of court, basically by establishes that this is no way could have been connected or established that it was within the scope of rendering medical or psychiatric care. The complaint alleged quite the opposite in terminology. I don’t know what the facts are going to show one way or the other, but I have to take that allegation particularly in Paragraph 12 on its face value and say this particular employee was not rendering medical or psychiatric are at the time. I don’t know what the facts are going to reveal, but at this stage, I don’t think I can grant a motion to dismiss. But in denying the motion to dismiss, I want to make it perfectly clear to everyone that I’m not resolving this issue overall. I’m saying that at this stage, having to give deference to the allegations and the complaint, I don’t think I could grant a motion to dismiss.
The trial court’s ruling may be summarized as follows:
1. In ruling on the motion to dismiss, the court was limited to review of the four corners of the complaint.
2. Based on the allegations in the complaint, the court could not say this case is based on medical negligence.
3. The court would revisit the issue if, as the facts develop, it becomes apparent the case is based on medical negligence.
The trial court’s ruling was entirely correct and did not constitute a departure from the essential requirements of law.

Pertinent Statutory Sections

Chapter 766, Florida Statutes, contains a complex process which must be followed in medical negligence cases. The chapter defines a claim for medical negligence as “arising out of the rendering of, or the failure to render, medical care or services.” § 776.106(l)(a), Fla. Stat.
The complex procedures contain strict presuit notice and investigation requirements. See, e.g., § 766.203, Fla. Stat. There are also extensive statutory requirements concerning breaches of standards of care and methods of proving these breaches in medical negligence actions. See, e.g., § 766.202, Fla. Stat. One specific example of a provision which would make no sense outside the context of medical judgment is section 766.203(2)(b), which requires corroboration of reasonable grounds to institute medical negligence litigation by providing “submission of a verified written medical expert opinion from a medical expert as defined” in the statute.
The clear import of these extensive procedures is to prevent ■ frivolous second guessing of health care providers in their diagnosis of patients and their method of treatment of patients. The onerous procedures were not intended to provide unnecessary obstacles to injured parties attempting to institute claims against health care providers for simple carelessness. Indeed, requirements of extensive investigation and written medical expert opinions would make no sense in the context of simple careless acts, such as carelessly leaving one’s keys where a patient can get them.
This court, in fact, has held on numerous occasions that where the challenged action does not involve a medical diagnosis or a decision that required professional skill or judgment, the presuit requirements need not be met. S. Baptist Hosp. of Fla., Inc. v. Ashe, 948 So.2d 889, 891 (Fla. 1st DCA 2007). See also Holmes Reg’l Med. Ctr., Inc. v. Dumigan, 151 So.3d 1282, 1286 (Fla. 5th DCA 2014). In a case clearly *344 analogous to the one at issue, involving security in a psychiatric lockdown unit, this court recognized that limitations should not be placed on a party’s right to sue. The court could not say on a “sparse record” with certainty that the claim arose “out of the rendering of medical care by licensed -health care providers subject to the • prevailing professional standard of care.” Robinson v. W. Fla. Reg’l Med. Ctr., 675 So.2d 226, 228 (Fla. 1st DCA 1996) (reversing summary judgment entered based on the court’s conclusion that the two-year medical malpractice statute of limitations applied).
Several other courts have reached similar conclusions concerning the appropriate way of analyzing the statute’s applicability. “[Bjecause the presuit requirements of [Florida’s Medical Malpractice Act] limit the constitutional right of access to courts, they must be narrowly construed.” Holmes, 151 So.3d at 1285 (citing Acosta v. HealthSpring of Fla., Inc., 118 So.3d 246, 248 (Fla. 3d DCA 2013)).
In analyzing whether an act constitutes medical or simple negligence we cannot forget what the clear language of the statute indicates is intended to be covered and not covered.

Case Law Analysis

There are many cases dealing with the distinction between medical negligence and simple negligence. On one end of the spectrum are cases involving alleged misdiagnosis or harm caused during the treatment of a patient, and on the other end are cases not involving professional judgment or skill, such as simple premises liability. Compare Broadway v. Bay Hosp., Inc., 638 So.2d 176 (Fla. 1st DCA 1994) (finding the collapse of a hospital bed did not constitute medical negligence), and Joseph v. Univ. Behavioral LLC, 71 So.3d 913 (Fla. 5th DCA 2011) (finding administrative decision not to separate patients did not constitute medical negligence), with Goldman v. Halifax Med. Ctr., Inc., 662 So.2d 367 (Fla. 5th DCA 1995) (improperly conducting mammogram on patient constituted medical negligence).
In Holmes, 151 So.3d 1282, the court addressed many of the major cases in this area and attempted to establish a framework for determining when actions constituted medical negligence versus simple negligence.' The court stated that obvious cases of medical negligence involved “incorrect diagnosis or an error that occurs during treatment or surgery.” Id. at 1286. Specifically, the court stated:
It is axiomatic that the mere fact that a wrongful act occurs in a medical setting does not automatically transform the contested action into one that sounds in medical malpractice; the wrongful act must be “directly related to the improper application of medical services and the use 'of professional judgment or skill.” Corbo [v. Garcia], 949 So.2d [366] at 368 [ (Fla. 2d DCA 200.7) ] (quoting Lynn v. Mount Sinai Med. Ctr., Inc., 692 So.2d 1002, 1003 (Fla. 3d DCA 1997)). This Court has previously held that “[t]he primary test for whether a claim is one for rhedical malpractice is whether the claim relies on the application of the medical malpractice standard of care.” Pierrot [v. Osceola Mental Health, Inc.], 106 So.3d [491] at 493 [ (Fla. 5th DCA 2013) ] (citing Weinstock v. Groth, 629 So.2d 835, 838 (Fla.1993); Joseph v. Univ. Behavioral LLC., 71 So.3d 913, 917 (Fla. 5th DCA 2011); GalenCare, Inc. v. Mosley, 59 So.3d 138, 141-43 (Fla. 2d DCA 2011)).
Id. Cases not involving medical skill or judgment, however, are simple negligence actions not subject to the presuit requirements of chapter 776. Id. at 1287. This analysis is consistent with the purpose of the presuit requirements in chapter 766.
*345 Here, the hospital’s position is-that decisions concerning the level of security to provide for a psychiatric patient are directly related to diagnosis and establishing protocols and therefore constitute medical negligence. The courts of this state, including this court, have specifically rejected such an expansive definition and recognized that not all negligence related to security in a psychiatric lockdown unit constitutes medical negligence. In Joseph, 71 So.3d 913, and Robinson, 675 So.2d 226, the courts found claims that one patient attacked another did not constitute medical negligence. If anything, the alleged negligence in those cases, which related to the decision of whether to separate patients, is more directly related to a patient’s diagnosis and care than what occurred in this case, which was simple carelessness. These cases, in fact, control our decision in this case and constitute well-reasoned approaches to the problem. We should not recede from our Robinson decision or create conflict with the Fifth District Court of Appeal in Joseph.
Here, the hospital relies heavily on the case of Indian River Memorial Hospital, Inc. v. Browne, 44 So.3d 237 (Fla. 4th DCA 2010).. That case is different from this case because the plaintiff in Indian-River was in the course of being evaluated and treated. Here no evaluation and treatment of the deceased was alleged to have been taking place at the time of the negligence. To the extent that Indian River can be read to hold that the mere failure to properly put up a guardrail on a hospital bed after diagnosis has taken place and was unrelated to medical treatment constitutes . medical negligence, wje should not follow the decision of our sister court.
The hospital also relies on Young v. Board of Hospital Directors of Lee County, 426 So.2d 1080 (Fla. 2d DCA 1983). The Young court, however, never made a determination in that case that the actions of hospital personnel constituted “medical negligence.” The issue before the court was whether the written decision of a medical mediation panel was- -admissible. Thus, Young is not helpful in reaching a decision in this case.
Because the actions alleged in the complaint are unrelated to diagnosis and treatment, the trial court was correct in denying the motion to dismiss. ' ‘'