# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D23-279
LT Case No. 2017-DP-140

———————————————

GUARDIAN AD LITEM, and K.F.,
and J.F., Adoptive Parents of
RA.W.,

    Petitioners,

    v.

DEPARTMENT OF CHILDREN AND
FAMILIES; R.W., JR., and T.W.,
Biological/Former Parents; R.W., SR.,
and C.W., Paternal Grandparents/Adoptive Parents
of R.W., III,

    Respondents.

———————————————


Petition for Certiorari Review of the Order from the Circuit Court for Clay County.
Angela M. Cox, Judge.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Sarah Todd Weitz, Senior Attorney, of Statewide Guardian ad Litem Office, Tallahassee, for Petitioner, Guardian ad Litem.

Alan I. Mishael, Boca Raton, for Petitioners, K.F. and J.F., Adoptive Parents of Ra.W.

Henry G. Gyden, of Gyden Law Group, P.A., Tampa, and Karen Gievers, Tallahassee, and Octavia O. Brown and Valentina Villalobos, of Community Law for Families and Children, PLLC,

Tampa, for Respondents, R.W., Jr., and T.W., Biological/Former Parents, R.W., Sr., and C.W., Paternal Grandparents/Adoptive Parents of R.W., III.

Sarah J. Rumph, of Children's Legal Services, Tallahassee, for Respondent, Department of Children and Families.

October 18, 2023

LAMBERT, J.

Petitioners, Guardian ad Litem ("GAL") and K.F. and J.F., the adoptive parents of Ra.W. ("the adoptive parents"), seek certiorari review and relief from an order entered by the circuit court granting Respondents', R.W., Jr., and T.W. ("the birth parents") and R.W., Sr., and C.W.'s ("the paternal grandparents") motion for access to the court records in three dependency cases.[1] For the following reasons, we grant, in part, and deny, in part, the petition.

I.

We begin with a brief review of the history and parties involved in these dependency cases. The birth parents had two minor children, R.W. III and Ra.W. At the age of three months, Ra.W. was discovered to have various fractures, the origin of which was in dispute. As a result, dependency case number 2017-DP-140 was initiated by the Department of Children and Families ("DCF") as to both children. Ultimately, DCF petitioned to terminate the birth parents' parental rights to these two children.

Following trial, the birth parents' parental rights to R.W. III and Ra.W. were terminated in March 2018. No appeal of the final judgment terminating their parental rights was taken. R.W. III was adopted by the paternal grandparents in April 2019; and Ra.W. was adopted by the adoptive parents, K.F. and J.F., who

---

[1] This order was stayed pending resolution of the instant proceeding. Consistent with the instant opinion, the stay previously imposed is vacated.

were not related to Ra.W., in July 2019. The birth parents later moved to vacate the final judgments of adoption and the final judgment terminating their parental rights. The circuit court dismissed their motions with prejudice. No appeal was taken from the dismissal order.

After being adopted by his paternal grandparents, R.W. III became the subject of a second dependency case, 2019-DP-168, which was closed with no change in the legal relationship between the paternal grandparents and their adopted son, R.W. III. The birth parents then had another child, T.W., who became the subject of dependency case number 2021-DP-15, which was subsequently dismissed.

In May 2022, the birth parents and the paternal grandparents filed the subject motion for access to the court records in the above-described cases. The dependency court granted their motion, which is the order being challenged by the instant petition for writ of certiorari.

II.

To obtain certiorari relief, Petitioners must establish that "(1) the order 'depart[s] from the essential requirements of the law,' and (2) 'result[s] in material injury for the remainder of the case (3) that cannot be corrected on post-judgment appeal.'" *M.M. v. Fla. Dep't of Child. & Fams.*, 189 So. 3d 134, 138 (Fla. 2016) (alterations in original) (quoting *Keck v. Eminisor*, 104 So. 3d 359, 364 (Fla. 2012)). The second and third prongs or elements of this standard, often collectively referred to as "irreparable harm," are jurisdictional. *Holmes Reg'l Med. Ctr., Inc. v. Dumigan*, 151 So. 3d 1282, 1284 (Fla. 5th DCA 2014) (citing *Citizens Prop. Ins. v. San Perdido Ass'n*, 104 So. 3d 344, 351 (Fla. 2012)). Accordingly, before addressing the merits of the petition—that is, whether the order departs from the essential requirements of the law—the first task is to determine whether irreparable harm has been shown to trigger our jurisdiction. *See DecisionHR USA, Inc. v. Mills*, 341 So. 3d 448, 452 (Fla. 2d DCA 2022).

Section 39.0132(3), Florida Statutes (2021), governs the inspection of court records in dependency cases. It provides, in pertinent part:

> All court records required by this chapter shall not be open to inspection by the public. All records shall be inspected only upon order of the court by persons deemed by the court to have a proper interest therein, except that, subject to the provisions of s. 63.162, a child and the parents of the child and their attorneys . . . shall always have the right to inspect and copy any official record pertaining to the child.

§ 39.0132(3), Fla. Stat. (2021). We have no difficulty in finding that an order that improperly permits disclosure of confidential court records in dependency cases satisfies the necessary showing of irreparable harm as this constitutes the figurative "cat out of the bag" type of error that cannot be later remedied on plenary appeal. *See Statewide Guardian ad Litem v. Alberto*, 351 So. 3d 625, 629 (Fla. 3d DCA 2022) (holding that the disclosure of confidential records from a dependency case caused "irreparable injury which cannot be adequately remedied on appeal following final judgment" (citing *D.C. v. J.M.*, 133 So. 3d 1080, 1082 (Fla. 3d DCA 2014))).

## III.

Having concluded that we have jurisdiction in this proceeding, we turn to whether the dependency court's order authorizing the birth parents' and paternal grandparents' access to the court records in the three dependency cases constituted a departure from the essential requirements of the law. A departure of this type is established if the order amounts to "a violation of a clearly established principle of law resulting in a miscarriage of justice." *Tedder v. Fla. Parole Comm'n*, 842 So. 2d 1022, 1024 (Fla. 1st DCA 2003) (quoting *Combs v. State*, 436 So. 2d 93, 96 (Fla. 1983)). Critically, certiorari is not to be used to redress mere legal error; rather, it applies to correct a miscarriage of justice when no other

4

remedy is available. *Allstate Ins. v. Kaklamanos*, 843 So. 2d 885, 889 (Fla. 2003).

Pertinent here, section 39.0132(3), Florida Statutes, makes clear that dependency court records are accessible only by court order and only to parents of the child and their attorneys[2] or to persons deemed by the court to have a "proper interest" in the records. Accordingly, for the birth parents or the paternal grandparents to be entitled to inspect the court records in any or all of the three subject dependency court cases, they must either meet the definition of being the parent of the child or children in the case or be deemed by the dependency court to have a "proper interest" in the court records. We now address each of the dependency cases.

IV.

The instant order provided the birth parents with access to the court records in case number 2021-DP-15 regarding the minor child, T.W. As their parental rights to T.W. have not been terminated, the court order correctly recognized both their and their attorneys' right to access and inspect these court records.[3]

The order also permitted the paternal grandparents the right to access and inspect the court records in case number 2019-DP-168 regarding R.W. III. We find no error in this ruling. The paternal grandparents legally adopted R.W. III. Under section 39.01(56), Florida Statutes (2021), if a child is legally adopted, the term "parent" means the adoptive mother or father of the child.

---

[2] Section 39.0132(3) names other entities that "always have the right to inspect" such records (e.g., law enforcement agencies), but those provisions are not pertinent to the instant proceedings because neither the birth parents nor the paternal grandparents could be reasonably characterized as any of those entities.

[3] The order did not authorize the paternal grandparents the right to inspect the court records in case number 2021-DP-15.

5

Thus, the parental grandparents are the legal parents of R.W. III, and they and their attorneys have the right to inspect and copy the court records in case number 2019-DP-168.[4]

Circuit court case number 2017-DP-140 was the dependency proceeding for both R.W. III and his sister, Ra.W. Thus, for the reasons just explained, the paternal grandparents and their attorneys are entitled to inspect and copy the court records in this case pertaining to R.W. III.

As to the birth parents, as previously indicated, their parental rights to both children were legally terminated in 2018. Under section 39.01(56), the term "parent" does not include an individual whose parental rights to the child have been legally terminated. Therefore, the instant court order granting the birth parents access to the confidential court records in cases 2017-DP-140 and 2019-DP-168 regarding R.W. III and Ra.W is sustainable only if the birth parents showed a "proper interest" in these court records. Petitioners contend that the birth parents, having had their parental rights terminated, are no different than any member of the public at large seeking these confidential records and thus lack the proper interest needed to obtain access to these confidential court records.

The birth parents argued below and here that they demonstrated the "proper interest" in these court records based on their pending separate civil suits against GAL, DCF, the adoptive parents of Ra.W., and the birth parents' former counsel in which they seek damages for alleged fraudulent conduct of these parties that culminated in their losing their parental rights to the children. The birth parents asserted that this interest differs significantly from that of the public at large and thus justified the dependency court granting them access to the records.

---

[4] Section 39.0132(3) contains a proviso that the parents' right to access the dependency court records is subject to section 63.162 (pertaining to the confidentiality of adoption records), but application of that condition is not material to the resolution of the instant proceedings.

6

In finding that the birth parents established the requisite "proper interest" under section 39.0132(3) to access and inspect the court records in case numbers 2017-DP-140 and 2019-DR-168, the dependency court relied upon the Second District Court of Appeal's opinion *In re J.B.*, 101 So. 3d 407 (Fla. 2d DCA 2012). In that case, the City of Plant City was defending against a wrongful death suit in which the plaintiff sought to recover damages on behalf of a minor child. *Id.* at 408. The child was under the supervision of DCF after his mother had been murdered and his father was thereafter incarcerated for the murder. *Id.* at 408–410.

The City moved to inspect the dependency court records concerning the child, but its motion was denied. *Id.* at 409. The Second District Court reversed, finding that under section 39.0132(3), the City had established the requisite proper interest to inspect these court records that differed from that of the public at large. *Id.* at 410–11. The court concluded that the City had a legitimate and appropriate need to access the records in order to allow it to discover facts to assess the claim for damages being brought against it, for purposes of either defending itself or engaging in settlement negotiations. *Id.* at 410.

Here, the birth parents' separate civil suits seek damages for alleged fraudulent or negligent conduct of the aforementioned persons and entities; and they similarly seek to discover facts from the dependency court records to assist in their efforts to recover damages on their claims.[5] The dependency court's reliance upon *J.B.* in granting the birth parents' access to the court records in case number 2017-DP-140 and 2009-DP-168 was consistent with

---

[5] The birth parents also argued that they had shown proper interest to access these confidential court records to assist them in their effort to set aside the final judgment terminating their parental rights and the final judgments of adoption that have been final for more than three years. While, as argued by Petitioners, such efforts to do so now would appear to be completely barred by the statute of repose codified at section 63.182(1), Florida Statutes (2017), and thus not meet the threshold of a "proper interest," our resolution of this petition obviates the need to address this argument.

7

the ruling in that case, and thus did not constitute a violation of a clearly established principle of law necessary to justify certiorari relief here. We therefore deny the petition as to Petitioners' efforts to preclude the birth parents' access to the court records in these two cases.

V.

Lastly, we conclude that while the paternal grandparents are entitled to access those parts of the court records in case number 2017-DP-140 that pertain to R.W. III, they are not entitled to that part of the court records that are solely related to Ra.W., as they are not Ra.W's legal parents nor do they have a proper interest in these records. We therefore quash the order in part; and we remand for the lower court to conduct an in camera review of the court records in case number 2017-DP-140 and, to the extent that there are court records that pertain exclusively to Ra.W., to enter an order or take other appropriate action that precludes the paternal grandparents from inspecting and copying these specific records.

PETITION DENIED, in part; ORDER QUASHED, in part; REMANDED, with directions.

MAKAR and WALLIS, JJ., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

8