GRIFFIN, J.
James Joseph [“Joseph”] appeals the summary final judgment entered in favor of University Behavioral Center [“UBC”] after the trial court determined that Joseph’s negligence claim against UBC was a claim for medical malpractice, but that Joseph had failed to comply with the presuit *915 requirements of Florida’s Medical Malpractice Act,[1] and that the two-year statute of limitations for a medical malpractice claim had expired before he filed suit. Joseph contends that his negligence claim was a claim of ordinary negligence, not medical malpractice, making the presuit requirements of the medical malpractice statute and the two-year statute of limitations inapplicable to his case. We agree and reverse.
UBC is a psychiatric facility. Joseph was fourteen years old when he was confined to UBC for one year, by court order, after he was charged with arson, making a bomb threat, and destruction of school property. He was diagnosed with bipolar disorder, schizoaffective disorder, manic depression, and multiple personality disorder. L.F. was also admitted to UBC a few months after Joseph.
Joseph and L.F. participated in a tackle football game at UBC. Joseph tackled L.F., who responded by throwing punches at Joseph. UBC personnel separated the boys, but L.F. subsequently continued to bully Joseph by making threats and calling Joseph names. Joseph asked UBC to separate him from L.F. In his deposition, Joseph testified that UBC staff refused his request.
In the spring of 2004, Joseph and L.F. were in the cafeteria lunch line. Joseph was talking to a friend, who was also in the lunch line, about football and he recounted how he had tackled L.F. L.F. overheard the discussion, became angry and punched Joseph in the left eye. As a result, Joseph suffered a detached retina, eventually causing the loss of his left eye.
Joseph filed a negligence action against UBC and L.F. The second amended complaint asserted the following general allegations:
4. That in or about the third week of May, 2004 or possibly as early as the second week of March, 2004, [Joseph] was a resident of [UBC], and at all times material was under the care, control and supervision of said facility, its agents, servants and employees.
[[Image here]]
6. That in the weeks leading up to and during the incident complained of, [Joseph] endured periods of being bullied, taunted and suffered abuse by [L.F.] at said facility. That [UBC] knew or should have known about the abuse and should have taken action to correct it.
7. That the abuse toward [Joseph], continued and culminated in a situation in which [Joseph] was physically battered and assaulted by [L.F.], who with a closed fist struck [Joseph] in the side of [Joseph’s] head, [sic] causing [Joseph] a very serious medical injury. That the incident in which [L.F.] physically assaulted [Joseph] took place in the facilities [sic] cafeteria during a time the residents were supposed to be under the control and supervision of the staff and teachers of said facility.
The allegations of negligence in the second amended complaint were as follows:
12. That at all times material, [UBC], in operating a private psychiatric facility with young males as residents, had a legal duty to at all times supervise and control the behavior of those residents under their charge.
13. That [UBC] had an affirmative duty to provide adequate security to reduce the risk of one resident assaulting another.
14. That [UBC] had an affirmative duty to ensure its staff was properly trained so as to recognize and react to *916 emergency medical situations and conditions.
15. That [UBC] knew or should have known from prior events that [Joseph] was the victim of verbal and or physical abuse, and therefore should have been on notice of [Joseph] being the potential victim of bullying and/or a physical assault. Despite having this knowledge or despite the fact it should have had this knowledge, [UBC] was negligent in failing to protect [Joseph] or in failing to correct the situation leading to the physical assault on [Joseph].
16. Regardless, [UBC] was also negligent for failing to provide adequate supervision and for failing to provide adequate security at the time of the incident complained of, both duties imposed on [UBC] by operation of law.
17. [UBC] was further negligent in its failure to ensure [Joseph] was provided with timely and adequate medical treatment. The failure to provide such medical care contributed to or directly caused the loss of [Joseph’s] sight in his left eye.
18. As a consequence of the lack of adequate supervision and/or security and as a consequence of the failure of [UBC] to control its young male residents, [Joseph] was assaulted and battered as indicated above when he was struck by [L.F.], all while the residents were on [UBC’s] property and under the control and supervision (or lack thereof) of [UBC], its agents, servants and employees.
19. At the time and place mentioned above, [UBC], directly and through its agents and employees was negligent in the following manners although not exclusively:
a)In carelessly and negligently failing to properly, adequately or reasonably control, supervise and/or protect the residents in its charge.
b) In carelessly and negligently permitting the minor [L.F.] to abuse [Joseph], both verbally and physically.
c) In carelessly and negligently failing to correct the situation before it culminated in the physical assault as described above.
d) In the failure of [UBC], its employees and agents to act as reasonable and prudent people by obtaining timely and adequate medical treatment for [Joseph’s] medical emergency.
e) In the failure of [UBC] to ensure its employees and agents were properly trained to properly supervise and control its young charges.
f) In the failure of [UBC] to ensure its employees and agents were properly trained with regard to providing emergency medical care or recognizing the need for emergency medical care.
g) In the failure of [UBC], its employees and agents to act as reasonable and prudent people would act under the same or similar circumstances, particularly in ignoring [Joseph’s] protestations after his injury that he was blind or had distorted vision in his left eye.
h) In the failure of [UBC] to properly train and instruct its agents and employees to perform their jobs in a safe and reasonable manner so as to recognize and prevent bullying of students and so as to ensure the availability of emergency medical treatment.
i) Any and all of their acts of negligence which may be shown at the trial of this matter.
UBC answered the second amended complaint and asserted the following affirmative defense: “This action was brought more than two years from the time that [Joseph] knew or should have known of the injury or knowledge that there was a reasonable possibility that the injury was caused by medical negligence, and there *917 fore is barred pursuant to Florida Statutes § 95.11.” UBC also alleged: “[UBC] asserts that this Court lacks subject matter jurisdiction over this action by [Joseph’s] failure to comply with the conditions precedent prior to the filing of this action pursuant to Florida Statutes § 766.106 and § 766.203.” UBC then moved for summary judgment on the grounds set forth in their affirmative defenses. The trial court rendered a summary final judgment in UBC’s favor.
Section 766.106 imposes presuit requirements on a claim for medical negligence or malpractice. Such a claim is one “arising out of the rendering of, or the failure to render, medical care or services.” Mobley v. Gilbert E. Hirschberg, P.A., 915 So.2d 217, 218 (Fla. 4th DCA 2005) (quoting Burke v. Snyder, 899 So.2d 336, 338 (Fla. 4th DCA 2005); § 766.106(1)(a), Fla. Stat. (2008). Claims of simple negligence or intentional torts which do not involve the provision of medical care or services do not require compliance with chapter 766 presuit requirements. See Lake Shore Hosp., Inc. v. Clarke, 768 So.2d 1251 (Fla. 1st DCA 2000) (patient’s negligence claim arising from slip and fall between her hospital bed and bathroom was not cause of action for medical negligence subject to presuit requirements); Garcia v. Psychiatric Insts. of Am., Inc., 693 So.2d 66 (Fla. 5th DCA 1997). The test for determining whether a defendant is entitled to the benefit of the presuit screening requirements of section 766.106 is whether a defendant is liable under the medical negligence standard of care set forth in section 766.102(1).[2] The fact that a wrongful act occurs in a medical setting does not necessarily mean that it involves medical malpractice. Robinson v. West Fla. Reg’l Med. Ctr., 675 So.2d 226 (Fla. 1st DCA 1996); Durden v. Am. Hosp. Supply Corp., 375 So.2d 1096 (Fla. 3d DCA (1979) (complaint grounded in general negligence after finding no medical diagnosis, treatment, or care rendered by blood collection agency to patient who sold his blood). The wrongful act must be directly related to the improper application of medical services and the use of professional judgment or skill. Liles v. P.I.A. Medfield, Inc., 681 So.2d 711 (Fla. 2d DCA 1995) (general negligence claim allowed where process of complying with statutory requirements did not involve medical skill or judgment). A court must, on a case-by-case basis, look to the allegations in the complaint when determining whether a suit raises an issue of ordinary negligence or medical malpractice. Southern Baptist Hosp. of Fla., Inc. v. Ashe, 948 So.2d 889, 890 (Fla. 1st DCA 2007).
Similarly, the statute of limitations applicable to medical malpractice contained in section 95.11(4)(b), Florida Statutes (2011), provides:
(b) An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the *918 exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued, except that this 4-year period shall not bar an action brought on behalf of a minor on or before the child’s eighth birthday. An “action for medical malpractice” is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care....
(emphasis added). Thus, under the statute, the inquiry is twofold: (1) whether the action arose out of “medical ... diagnosis, treatment or care,” and (2) whether such diagnosis, treatment or care was rendered by a “provider of health care.” Silva v. Sw. Fla. Blood Bank, Inc., 601 So.2d 1184, 1186 (Fla.1992). The supreme court previously has held that the terms “diagnosis,” “treatment,” and “care” are unambiguous. Specifically, the court found:
In ordinary, common parlance, the average person would understand “diagnosis, treatment, or care” to mean ascertaining a patient’s medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient’s daily needs during the illness.
Id. at 1187.
In Mobley, a patient sued a dentist after one of his dental assistants accidentally struck the patient in the face causing injuries. The patient sued for simple negligence. The dentist raised the affirmative defense that the patient failed to comply with the presuit requirements of section 766.106. The trial court granted the dentist’s motion for summary judgment, ruling that the case was a medical malpractice case because the patient was injured during the course of treatment. The Fourth District, however, reversed, holding that the patient’s claim that she was negligently banged in the face with a piece of equipment involves a simple negligence claim independent of the standard of care imposed on a health care provider. 915 So.2d at 218. Deciding how to unstick the arm of the x-ray machine was not a medical service requiring the use of a medical professional’s judgment or skill. In rejecting the argument that chapter 766 applied merely because the accident occurred after the patient was positioned in the dental chair for treatment, the court held that if an intentional tort or negligence does not arise out of the rendering of medical services, chapter 766 does not apply even if an injury occurs after the delivery of medical services has commenced. Id. at 219.
Likewise, in Tenet St. Mary’s, Inc. v. Serratore, 869 So.2d 729 (Fla. 4th DCA 2004), a patient was injured after receiving dialysis treatment at St. Mary’s. The patient was sitting in a reclining chair after completing dialysis treatment and a St. Mary’s employee attempted to assist her by returning the chair to its upright position so that the patient could stand up. The employee attempted to kick the footrest of the chair to return the chair to the upright position, but instead accidentally kicked the patient’s right foot. The injury did not heal and eventually required a below-the-knee amputation. St. Mary’s filed a motion to dismiss claiming that the patient did not comply with the chapter 766 presuit requirements. St. Mary’s argued that even though the patient was alleging simple negligence, the patient was required to file her complaint as a medical malpractice case because the injury occurred while she was under the care of a hospital employee after receiving dialysis *919 treatment. The Fourth District disagreed, deciding that the allegations of the complaint were not for medical negligence.
Similarly, in Ashe, the First District denied the hospital’s petition for writ of cer-tiorari because the respondent’s cause of action, negligence in the release of respondent’s daughter under the Baker Act, did not sound in medical malpractice, but instead in ordinary negligence. 948 So.2d at 890. The court found that the respondent did not challenge any medical diagnosis or decision that required professional skill or judgment. Id. at 891. Additionally, in Palm Springs General Hospital, Inc. v. Perez, 661 So.2d 1222, 1223 (Fla. 3d DCA 1995), the Third District denied a hospital’s petition for writ of certiorari after ■finding that negligently placing the plaintiff, a patient of the hospital, in a room with another patient, who committed a homosexual attack on the plaintiff was a cause of action for common law negligence, not medical malpractice.
Most analogous to this case is Robinson. There, the appellant was a patient at a psychiatric facility at West Florida Regional Medical Center. While there, she was attacked and injured by another patient. In her complaint, she alleged that the hospital negligently failed to provide adequate security for the safety of its occupants, including herself. She also alleged that the patient who assaulted her had previously assaulted another patient and that this fact was known to the hospital. In her deposition, the appellant indicated that she was alone in her room in a closed ward of the facility at the time of her assault. The hospital moved for summary judgment, asserting that the manner in which mental patients are supervised is necessarily governed by a medical standard of care. The trial court granted summary judgment, applying the two-year statute of limitations for medical malpractice. The First District noted that the complaint was for inadequate security, independent of any medical diagnosis, treatment or care. The court reversed the summary final judgment because the claim did not arise “out of the rendering of medical care by licensed health care providers subject to the prevailing professional standard of care.” 675 So.2d at 228.
In the trial court, UBC essentially adopted the approach that everything that happens in a psychiatric care facility is psychiatric treatment and any negligence is within the realm of medical malpractice. On appeal, UBC concedes, in the abstract, that it could be guilty of ordinary negligence, but UBC contends that the facts of this case would only support a claim of medical negligence. According to UBC, the decision to not separate Joseph and L.F. was a “medical” decision having to do with the “socialization” of Joseph and that it accordingly falls within the category of medical care and treatment for which compliance with the medical malpractice statute and statute of limitations were required. UBC acknowledges, as it must, that the record does not refute the existence of any issue of fact supporting the claims of negligence contained in the complaint. UBC also acknowledges that there is no record evidence that Joseph’s injuries resulted from any decision made in the course of Joseph’s psychiatric treatment. UBC suggests that Joseph only complained in his deposition of the failure of UBC to separate the two boys and that any decision not to separate them was necessarily part of psychiatric care and treatment. First, it is not accurate that Joseph only complained of the failure to separate the two boys and nothing in the deposition comes close to abandonment of the pleaded allegations of ordinary negligence. Nor does the deposition suggest that any psychiatric treatment decisions resulted in his exposure to the injury he *920 suffered. Joseph’s suit is not barred by the failure to comply with the medical malpractice presuit requirements or the two-year statute of limitations. We accordingly reverse and remand for a decision on the merits.
REVERSED.
LAWSON, J., and ZAMBRANO, R.A., Associate Judge, concur.

. Chapter 766.02 et seq., Florida Statutes (2003).

. Section 766.102(1), Florida Statutes (2008), states:
(1) In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 766.202(4), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.