IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DENISE TOWNES, AS POWER
OF ATTORNEY, ET AL.,

        Appellants,

 v.                                                                    Case No. 5D14-904

THE NATIONAL DEAF ACADEMY,
LLC, ETC.,

        Appellee.
_____/

Opinion filed June 17, 2016

Appeal from the Circuit Court
for Lake County,
Mark J. Hill, Judge.

Nicholas A. Shannin and Pamela R. Masters,
of Shannin Law Firm, P.A., Orlando, and
Michael J. Brevda, of Domnick Law, Palm
Beach Gardens, for Appellants.

Mark Hicks, Mary Gniadek, and Shannon
Debus-Horn, of Hicks, Porter, Ebenfeld &
Stein, P.A., Miami, and Julie W. Allison, of
Julie W. Allison, P.A., Miami, for Appellee.


EDWARDS, J.

     ON MOTIONS FOR REHEARING, CLARIFICATION, AND CERTIFICATION

     We grant Appellee's motions for clarification and for rehearing in part, and deny

them in part. We deny Appellee's motions for rehearing en banc and for certification. We

substitute the following opinion in place of our original opinion.

Denise Townes, individually, and on behalf of her niece, Cinnette Perry ("Perry"), a minor, ("Appellants") appeal the trial court's entry of final summary judgment in favor of the National Deaf Academy, LLC ("NDA"). About one month after her admission to NDA, Perry was throwing rocks at staff members and windows. In an effort to control her behavior, staff members employed a specific physical restraint method. As she was forced to the ground, Perry's leg was injured and ultimately required amputation. For the reasons discussed below, we affirm in part and reverse in part.

FACTS LEADING TO PERRY'S INJURY

On July 17, 2008, Perry was admitted to NDA following an acute psychiatric inpatient admission at another facility. NDA operates as both a school and a residential treatment facility, licensed pursuant to Chapter 394, Florida Statutes (2008), for deaf, hard of hearing, and autistic individuals suffering from psychiatric and behavioral disorders. NDA offers psychiatric, psychological, medical, speech therapy, and educational services to its residents. NDA's staff includes psychiatrists, nurses, teachers, therapists, and sign language interpreters.

Before going to NDA, Perry was diagnosed with bipolar disorder-mixed, intermittent explosive disorder, impulse control disorder not otherwise specified, conduct disorder, and post-traumatic stress disorder. During her admission, an NDA psychiatrist established a plan of care for Perry that included Therapeutic Aggression Control Techniques ("TACT"), which involves staff members physically restraining the resident. Prior to employing a TACT hold, the most senior employee on scene is required to make a determination as to whether the TACT hold is an appropriate method to control the resident.

2

On August 7, 2008, Danielle Warren, a nurse employed by NDA, received notice that Ms. Perry "eloped off campus." When Perry voluntarily returned to NDA's campus, she began throwing rocks at NDA staff and its buildings, causing several windows to shatter. Perry also pulled on cables, wires, and lightning rods, trying to dislodge them.

After the staff removed the other residents from the area, four NDA staff members attempted to verbally de-escalate the situation. Since Perry was not responding to the verbal de-escalation attempts, Nurse Warren made the decision to perform a TACT protective hold. After Nurse Warren called Dr. Karen Goldberg, NDA's Associate Medical Director, the staff attempted to employ a TACT hold. The attempt was unsuccessful as Perry was agitated. According to Nurse Warren, Perry positioned her toe down into where "the dirt meets the concrete" and then wrapped her leg around Nurse John Barclay, causing both to fall. As she fell, Perry sustained an injury to her leg, which the staff believed to be a dislocated knee. While they were waiting for the paramedics, NDA staff conducted a full physical assessment of Perry and, pursuant to Dr. Goldberg's recommendation, gave Perry her previously prescribed medication. According to Nurse Barclay, Perry had a defined pulse in the affected leg. Approximately twenty minutes later, the ambulance arrived and took Perry to Florida Hospital.

On August 9, 2008, as a result of the injury sustained during the attempted TACT protective hold, Perry underwent an above-the-knee amputation of her left leg. Her preoperative diagnoses were nonviable left leg after knee injury, popliteal artery disruption, and compartment syndrome.

3

ORIGINAL AND AMENDED COMPLAINTS

Appellants' current attorneys, their third legal team, filed the original complaint against NDA on April 23, 2012. Counts I and II of the original complaint alleged that NDA, through its employees and agents, negligently injured Perry by: failing to properly care for her, failing to recognize that NDA was unable to care for her, failing to send her to a higher level care facility, failing to maintain control over her, failing to implement necessary safety precautions, failing to prevent injuries to her, forcefully throwing her onto the floor, forcefully restraining her on the floor, failing to recognize that she sustained a serious leg injury, failing to obtain proper medical care for her, failing to provide reasonable care to her, and failing to act reasonably under the circumstances.

NDA filed a motion to dismiss the complaint with prejudice, asserting that Appellants failed to comply with the medical malpractice presuit requirements of Chapter 766, Florida Statutes (2008), before the applicable two-year statute of limitations had expired. Appellants were allowed to conduct limited discovery focused on whether the TACT hold was employed by non-medical as well as medical NDA staff members. After certain depositions were completed, NDA renewed its motion to dismiss the original complaint, and also filed an alternative motion for final summary judgment.

Shortly before the hearing on NDA's motions, Appellants filed an amended complaint adding four new causes of action. As in the original complaint, Counts I and II of the amended complaint asserted general negligence claims. Counts III and IV of the amended complaint asserted "alternative" medical malpractice claims based upon the same factual allegations contained in Counts I and II. Counts V and VI of the amended complaint asserted that NDA was liable based upon its alleged violations of the Florida

Mental Health Act, also known as the Baker Act, Chapter 394, Florida Statutes (2008). In Counts V and VI, Appellants claimed that NDA failed to provide Perry with the least restrictive appropriate care; failed to provide her with skillful, safe, and humane mental health services; and otherwise failed to comply with the requirements of the Baker Act. The trial court entered its order granting NDA's motion and entered final summary judgment against Appellants on all claims asserted in the amended complaint.

## SUMMARY JUDGMENT STANDARDS

The "standard of review of a summary judgment order is de novo and requires viewing the evidence in the light most favorable to the non-moving party." *Sierra v. Shevin*, 767 So. 2d 524, 525 (Fla. 3d DCA 2000) (citing *Walsingham v. Dockery*, 671 So. 2d 166 (Fla. 1st DCA 1996)). "If the 'slightest doubt' exists, then summary judgment must be reversed." *Id.* (citing *Hancock v. Dep't of Corrs.*, 585 So. 2d 1068 (Fla. 1st DCA 1991)). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000) (citing *Menendez v. The Palms W. Condo. Ass'n*, 736 So. 2d 58 (Fla. 1st DCA 1999)).

## COUNTS I AND II - SUMMARY JUDGMENT REVERSED

The trial court agreed with NDA's position that the use of the TACT hold arose out of rendering medical care and services to Perry; therefore, it found that Counts I and II of the amended complaint alleged medical malpractice claims. Summary judgment was granted in favor of NDA on those two counts because the trial court found that the statute of limitations had expired and Appellants had not complied with the presuit medical malpractice notification requirements. For the reasons explained below, we reverse.

Section 766.106, Florida Statutes (2008), "imposes presuit requirements on a claim for medical negligence or malpractice." *Joseph v. Univ. Behavioral LLC*, 71 So. 3d 913, 917 (Fla. 5th DCA 2011). An "'action for medical malpractice' is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person *arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of* [healthcare]." *Silva v. Sw. Fla. Blood Bank, Inc.*, 601 So. 2d 1184, 1186 (Fla. 1992) (quoting § 95.11(4)(b), Fla. Stat. (1992)). "In ordinary, common parlance, the average person would understand 'diagnosis, treatment, or care,' to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness." *Id.* at 1187; s*ee also Buck v. Columbia Hosp. Corp. of S. Broward*, 147 So. 3d 604, 606 (Fla. 4th DCA 2014) ("A claim for negligence is subject to Chapter 766's [presuit] requirements 'if the wrongful act is directly related to the improper application of medical services and the use of professional judgment or skill'" (quoting *Stubbs v. Surgi-Staff, Inc.*, 78 So. 3d 69, 70 (Fla. 4th DCA 2012))). Appellants argue that they were not required to comply with the Chapter 766 presuit requirements because NDA is not a healthcare provider and the TACT protective hold was not medical care or treatment. While NDA concedes that it is not a healthcare provider, it argues that Chapter 766 applies because NDA would be held vicariously liable since the employees who administered the TACT protective hold on Perry are healthcare providers under section 766.202(4), Florida Statutes (2008).

This Court's decisions in *Joseph*, 71 So. 3d 913 (Fla. 5th DCA 2011), and *Pierrot v. Osceola Mental Health, Inc.*, 106 So. 3d 491 (Fla. 5th DCA 2013), are helpful in

6

analyzing whether Counts I and II constitute medical malpractice claims. In *Joseph*, the plaintiff, a patient in a psychiatric facility, filed a negligence complaint against the institute after another patient punched him. 71 So. 3d at 915. The psychiatric institute contended that plaintiff's claims were time-barred medical malpractice claims. *Id.* at 915-17. This Court reasoned that the "fact that a wrongful act occurs in a medical setting does not necessarily mean that it involves medical malpractice" and held that no "psychiatric treatment decisions resulted in [the plaintiff's] exposure to the injury he suffered" and, thus, the suit alleged an ordinary negligence claim and not a medical malpractice claim. *Id.* at 917-920. In *Pierrot*, the plaintiff filed a wrongful death claim against a psychiatric institute. 106 So. 3d at 492. The institute alleged that plaintiff's claim was one of medical negligence. *Id.* This Court, however, found that the plaintiff's claim relied exclusively on statutory standards set by the Baker Act and reasoned that although there is "overlap between the medical aspects of [the] Baker Act patients' rights and a cause of action for medical malpractice, the presuit requirements must be construed narrowly to apply only to malpractice claims, not to separate statutory claims." *Id.* at 494. Thus, this Court held that plaintiff's claim was not for medical malpractice. *Id.* at 493-94.

Even though this case is distinguishable from *Joseph* in that the injury was caused by the medical personnel's actions and not by another patient, the cases are similar in that the parties disagree about whether the injury resulted from a decision involving medical skill or judgment. NDA argues that the TACT protective hold was medical treatment because it was made a part of Perry's care plan. NDA specifically relies on the testimony of Nurses Warren and Barclay, who stated that the decision to incorporate such TACT protective holds into a treatment plan could only be made by a doctor. However,

7

as Nurse Warren testified in her deposition, the purpose of a TACT protective hold is to ensure the safety of the residents, and that non-medical personnel, such as sign language interpreters, also underwent TACT training. There was additional record evidence that the decision of whether to employ a TACT protective hold is to be made by the most senior person trained in TACT; however, that person does not necessarily have to be a medical professional. Appellee has repeatedly asserted that the factual record on this issue was fully developed, leaving only a legal issue for decision by the trial court and review by this court. The question of whether a complaint asserts claims for ordinary or medical negligence is a question for the court, not the jury. *See, e.g.*, *Silva*, 601 So. 2d at 1187 (Fla. 1992) ("[W]e must first ascertain whether [defendant] rendered 'diagnosis, treatment, or care' to the plaintiff patients in this case."). We find that on the record before this court, the use of the TACT protective hold on Perry was not for treatment or diagnosis of any condition, was not employed to meet Perry's daily needs during care, and did not require medical skill or judgment as non-medical staff were taught the procedure and were authorized to decide whether to employ it. We find that Counts I and II assert claims sounding in ordinary negligence, rather than medical malpractice. Accordingly, we reverse the summary judgment entered on Counts I and II.

SUMMARY JUDGMENT PROPER AS TO COUNTS III AND IV

Counts III and IV of the amended complaint are clearly designated as medical malpractice claims. The trial court granted summary judgment as to those counts because Appellants did not comply with the presuit medical malpractice requirements. The trial court also concluded that the statute of limitations expired before suit was filed. Appellants argue that until NDA asserted that they did not comply with the medical

8

malpractice procedures, they were unaware that NDA's acts or omissions could be considered medical malpractice since they were told that NDA was a school, not a medical facility. Thus, Appellants maintain that the statute of limitations did not begin to run until NDA's motion to dismiss was served, arguing this was the date Appellants "discovered" that Perry's injury could have resulted from medical malpractice.

"An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence . . . ." § 95.11(4)(b), Fla. Stat. (2008). Knowledge "of the injury . . . means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice." *Tanner v. Hartog*, 618 So. 2d 177, 181 (Fla. 1993) (footnote omitted). The injury alone can "communicate[] the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself." *Id.* 181-82. However, "if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred." *Id.* at 182. Section 95.11(4)(b) "establishes both a subjective component, what the plaintiff actually knew, and an objective component, what an objectively reasonable plaintiff should have discovered with the exercise of diligence. A plaintiff's cause of action accrues when either component of the discovery rule is satisfied." *Thomas v. Lopez*, 982 So. 2d 64, 67 (Fla. 5th DCA 2008).

Because notice or knowledge on the part of Appellants' counsel can be considered as notice or knowledge on the part of Appellants, the trial court properly considered

9

Appellants' counsel's knowledge as evidence in granting summary judgment. *See Brooks Tropicals, Inc. v. Acosta*, 959 So. 2d 288, 295 (Fla. 3d DCA 2007). There is evidence in the record demonstrating that Appellants' first counsel was aware, as early as 2010, that Perry's injuries could have resulted from medical malpractice. On April 13, 2010, Appellants' first attorney sent notice to NDA's counsel of the claims they intended to file, including a claim for "[p]ersonal injury . . . arising out of the failure to administer and/or the improper administration of prescription medicine to Cinnette Perry, who was at the time, a minor patient, student, and client enrolled" at NDA. Thus, this letter indicates that Appellants' counsel may have had notice that NDA provided medical services to Perry, and that there was "a reasonable possibility that the injury was caused by medical malpractice." *See Tanner*, 618 So. 2d at 181.

Additionally, on September 13, 2011, Appellants' second counsel mailed a letter to NDA stating that, pursuant to a September 12, 2011, phone call between the two parties, Appellants intended to pursue an action in general negligence since "other available or possible theories (i.e. [m]edical negligence) of proceeding, may not be available due to statutory limitations period having expired." Clearly, Appellants' counsel contemplated a medical malpractice theory in 2011. Appellants contend that the September 13, 2011, letter informed NDA that a medical malpractice claim against Florida Hospital was time barred; however, the letter was addressed only to NDA and does not make any reference to Florida Hospital. The trial court correctly concluded that the medical malpractice statute of limitations had expired before suit was filed. Thus, final summary judgment was properly entered on Counts III and IV.

COUNTS V AND VI RELATE BACK AND ARE NOT TIME BARRED

The trial court also granted NDA's motion for summary judgment as to Counts V and VI of the amended complaint, which assert Baker Act claims. The court ruled that those new counts relied upon newly asserted facts, first alleged after the statute of limitations had run, and thus did not relate back to the original complaint.

Under Florida Rule of Civil Procedure 1.190(c), "[w]hen the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading." This Court has held that "[a]s with all pleading rules, this rule is to be liberally interpreted." *Fabbiano v. Demings*, 91 So. 3d 893, 894 (Fla. 5th DCA 2012). When an amendment contains the "same general factual situation as that alleged in the original pleading, then the amendment relates back even though there is a change in the precise legal description of the rights sought to be enforced, or a change in the legal theory upon which the action is brought." *Id.* at 895 (quoting *Associated Television & Commc'ns, Inc. v. Dutch Vill. Mobile Homes of Melbourne, Ltd.*, 347 So. 2d 746, 748 (Fla. 4th DCA 1977)). A "new cause of action . . . can relate back to the original pleading so long as the new claim is not based on different facts, such that the defendant would not have 'fair notice of the general factual situation.'" *Janie Doe 1 ex rel. Miranda v. Sinrod*, 117 So. 3d 786, 789 (Fla. 4th DCA 2013) (quoting *Dailey v. Leshin*, 792 So. 2d 527, 532 (Fla. 4th DCA 2001)).

The original complaint's negligence claims against NDA do not refer only to the August 8th incident and subsequent injury to Perry. Similar to Counts V and VI of the amended complaint, Count I of Appellants' original complaint also requires consideration

11

of Perry's care and treatment during the entire time she attended NDA as the negligent acts alleged included, for example, failure to "properly care for the minor," failure to "implement necessary precautions related to" her, and failure "to provide reasonable care" to Perry.

Therefore, the amended complaint "arises from 'a common core of operative facts'" shared with the original complaint. *Fabbiano*, 91 So. 3d at 896 (quoting *Mayle v. Felix*, 545 U.S. 644, 659-60 (2005)). Additionally, since the ordinary negligence claim of the original complaint requires consideration of the entire time Perry spent at NDA, the original complaint provides NDA with "fair notice of the general fact situation out of which the claim or defense arises." *Kalmanowitz v. Amerada Hess Corp.*, 125 So. 3d 836, 840 (Fla. 4th DCA 2013) (citing *Flores v. Riscomp Indus., Inc.*, 35 So. 3d 146, 148 (Fla. 3d DCA 2010)). Accordingly, the trial court committed reversible error when it determined that Counts V and VI of Appellants' amended complaint did not relate back to the filing date of the original complaint.

For the reasons stated above, we find that summary judgment was properly entered against Appellants as to Counts III and IV, but summary judgment should not have been entered with regard to Counts I, II, V and VI. We affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

LAWSON, C.J. and SAWAYA, J., concur.

12