# Third District Court of Appeal

**State of Florida**

Opinion filed August 1, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2291
Lower Tribunal No. 15-23355
_____

**Craig Simmons,**
Appellant,

vs.

**Jackson Memorial Hospital, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Akbar Law Firm, P.A., and Mutaqee N. Akbar and Brandi J. Thomas (Tallahassee), for appellant.

Abigail Price-Williams, Miami-Dade County Attorney, and Korissa Lepore, Assistant County Attorney, for appellee Public Health Trust of Miami-Dade County d/b/a Jackson Memorial Hospital.

Before ROTHENBERG, C.J., and SUAREZ and SCALES, JJ.

SCALES, J.

Appellant Craig Simmons, the plaintiff below, appeals a circuit court order granting appellee, the defendant below, Jackson Memorial Hospital's (the "Hospital") motion to dismiss Simmons's amended complaint with prejudice. We reverse the trial court's dismissal order because the allegations in Simmons's amended complaint do not establish, as a matter of law, that Simmons's lawsuit against Hospital is a claim for medical malpractice that requires compliance with the notice provision of section 766.106 of the Florida Statutes.

**I. Facts and Procedural Background**

Simmons was a resident psychiatric patient at a facility operated by Hospital. On October 11, 2013, another resident psychiatric patient, Gerald Allen, came into Simmons's room and beat Simmons with a metal handrail that Allen had removed from a hallway wall of the hospital. Simmons suffered injuries to his face and head. Simmons sued Hospital for negligence, and in his multi-count amended complaint,[1] Simmons alleged that Hospital had an affirmative duty both to (i) provide security to Simmons, and (ii) train its staff to recognize and address emergency situations such as the assault on Simmons. Simmons alleged that Hospital breached these duties by failing to correct the situation before the assault

---

[1] In addition to a negligence count, Simmons asserted claims for "strict vicarious liability" and "gross negligence" against Hospital, along with a battery count against Allen.

2

on Simmons occurred, and by failing to properly train its staff members to provide proper supervision and control of their psychiatric patients.

Hospital moved to dismiss Simmons's amended complaint, asserting that, irrespective of how Simmons's counts were labeled, Simmons's claims were actually medical malpractice claims, and that dismissal, therefore, was required because Simmons did not provide Hospital with the pre-suit notice required by section 766.106(2)(a) of the Florida Statutes.[2] Focusing on both the allegations of Simmons's amended complaint and the relevant statutory language of Florida's medical malpractice act, chapter 766 of the Florida Statutes (2013), Hospital argued that (i) Simmons's complaint – alleging Hospital's failures of security, supervision and training – essentially asserted a "breach of the prevailing professional standard of care," § 766.102(1), Fla. Stat. (2013); and (ii) Simmons's alleged damages arose "out of the rendering of, or the failure to render, medical care or services." § 766.106(1)(a), Fla. Stat. (2013). These allegations, according to Hospital, were sufficient to bring Simmons's claim within the ambit of chapter 766, requiring compliance with chapter 766's conditions precedent.

Agreeing with Hospital's argument, the trial court granted Hospital's motion, and dismissed Simmons's amended complaint with prejudice. Simmons timely appealed.

---

[2] After pre-suit investigation and before filing a complaint for medical malpractice, a claimant must notify each prospective defendant of the intent to initiate litigation.

**II. Standard of Review**

"The determination of whether a complaint alleges a claim for medical malpractice is a legal one and is, therefore, reviewed de novo." Nat'l Deaf Academy, LLC v. Townes, 242 So. 3d 303, 308 (Fla. 2018). "Because of the statutory restrictions and requirements that apply only to medical malpractice claims, any 'doubt' as to whether a claim is for ordinary negligence or medical malpractice should be 'generally resolved in favor of the claimant.'" Id. at 309 (quoting J.B. v. Sacred Heart Hosp. of Pensacola, 635 So. 3d 945, 947 (Fla. 1994)).

**III. Analysis**

A negligence claim constitutes medical malpractice when the claim arises out of the "rendering of, or the failure to render, medical care or services." § 766.106(1)(a), Fla. Stat. (2013). Statutory restrictions on a medical malpractice claim make a plaintiff's litigation path significantly more formidable than a claim that sounds in ordinary negligence. For example, medical malpractice has a shorter statute of limitations period than negligence;[3] pre-suit notice to the defendant is a condition precedent to bringing a medical malpractice claim;[4] and, there are more

---

[3] The statute of limitations for a medical malpractice claim is two years, see § 95.11(4)(a), Fla. Stat. (2013), while the statute of limitations for a negligence claim is four years. See § 95.11(3)(a), Fla. Stat. (2013).

[4] See §766.106(2)(a), Fla. Stat. (2013).

restrictions on proof in a medical malpractice action.[5] See generally, Townes, 242 So. 3d at 308-09.

As a result of the statutory obstacles imposed on medical malpractice claimants, this Court's appellate decisions have delved into the distinction between a medical malpractice and an ordinary negligence claim, concluding that the determinative factor is whether the plaintiff, in order to prevail, must rely upon the medical negligence standard of care as set forth in section 766.102(1).[6] See, e.g., Acosta v. Healthspring of Fla., Inc., 118 So. 3d 246, 248-49 (Fla. 3d DCA 2013) (concluding that hospital's failure to transport patient timely did not implicate medical negligence standard of care, and therefore sounded in ordinary negligence); S. Miami Hosp., Inc. v. Perez, 38 So. 3d 809, 811-12 (Fla. 3d DCA 2010); Tenet S. Fla. Health Sys. v. Jackson, 991 So. 2d 396, 399-400 (Fla. 3d DCA

---

[5] See § 766.102, Fla. Stat. (2013).

[6] This statute reads, in relevant part, as follows:

> In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider . . . , the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider.

§ 766.102(1), Fla. Stat. (2013). The alleged "breach of the prevailing professional standard of care" must be testified to by a qualified medical expert. § 766.102(5), Fla. Stat. (2013); see Townes, 242 So. 3d at 309.

2008) (concluding that allegations a nurse and hospital failed to render appropriate medical care and treatment implicated medical negligence standard of care so that the claim was a medical malpractice claim); Quintanilla v. Coral Gables Hosp., Inc., 941 So. 2d 468, 469-70 (Fla. 3d DCA 2006); Puentes v. Tenet Hialeah Healthsystem, 843 So. 2d 356, 357-58 (Fla. 3d DCA 2003) (concluding that plaintiff's claim that hospital's dietary plan had exacerbated her food poisoning sounded in medical malpractice because the plan was part of plaintiff's medical treatment).

We elaborate on two of these cases from our Court to better illustrate how the applicable standard of care determines whether the plaintiff's claim is one for medical malpractice rather than ordinary negligence. In South Miami Hospital, Inc. v. Perez, the plaintiff alleged the defendant was negligent in leaving the patient unrestrained and unattended in his hospital bed. We determined that the complaint's allegations could be proven only through evidence that the provider's conduct fell below the prevailing medical standard of care, so that the plaintiff's claim was one for medical malpractice. Perez, 38 So. 3d at 812. By contrast, in Quintanilla v. Coral Gables Hospital, Inc., a nurse injured a patient by spilling scalding hot tea on the patient's legs. This Court concluded that the plaintiff's claim did not implicate the nurse's medical skill or judgment; therefore, the claim

6

sounded in negligence rather than medical malpractice. <u>Quintanilla</u>, 941 So. 2d at 470.

Similarly, in <u>Joseph v. University Behavioral LLC</u>, 71 So. 3d 913 (Fla. 5th DCA 2011) – a case from our sister court relied upon heavily by Simmons – Joseph, a fourteen-year-old psychiatric resident patient was attacked by another patient who had bullied Joseph during the weeks preceding the attack. Joseph had asked to be separated from the attacker, but the hospital staff refused his request, and Joseph suffered a severe injury to his eye after the attacker punched him. <u>Id.</u> at 915. Joseph sued the psychiatric facility for ordinary negligence. In determining that Joseph's claim was one for negligence rather than for medical malpractice, the court concluded that no "psychiatric treatment decisions resulted in [Joseph's] exposure to the injury he suffered." <u>Id.</u> at 919-20. The court held that a claim is one for medical malpractice when a defendant is liable under the medical negligence standard of care set forth in section 766.102(1). <u>Id.</u> at 917. The court declined to adopt the approach that "everything that happens in a psychiatric care facility is psychiatric treatment." <u>Id.</u> at 919.

While these appellate decisions seem to focus on the requisite standard of care implicated by the plaintiff's allegations, our Florida Supreme Court recently amplified this approach by focusing also on the act from which the claim arises. Specifically, our Supreme Court concluded:

> [W]e hold that for a claim to sound in medical malpractice, the act from which the claim arises must be directly related to medical care or services, which require the use of professional judgment or skill. This inquiry involves determining whether proving the claim requires the plaintiff to establish that the allegedly negligent act 'represented a breach of the prevailing professional standard of care,' as testified to by a qualified medical expert.

Townes, 242 So. 3d at 311-312 (quoting § 766.102(1), Fla. Stat. (2013)).[7]

In Townes, a nurse, hired by the defendant residential treatment facility for the disabled, injured a patient by employing an aggressive hold technique to prevent the patient, who had been diagnosed with several disorders, from continuing to vandalize the defendant's facility. Id. at 306. The record reflected that, while only a doctor could authorize this aggressive hold technique as part of a patient's medical plan, whether to employ the hold in any given situation was a decision made by the most senior person present who is trained and qualified to administer the hold. Id. at 307. The record also reflected that all of the defendant's

_____

[7] The Florida Supreme Court accepted jurisdiction in Townes, finding conflict between the Fifth District's opinion in Townes v. National Deaf Academy, LLC, 197 So. 3d 1130 (Fla. 5th DCA 2016) and the First District's opinion in Shands Teaching Hospital & Clinics, Inc. v. Estate of Lawson, 175 So. 3d 327 (Fla 1st DCA 2015). In Shands, a psychiatric patient took an employee's unattended keys and badge, escaped the hospital grounds, and was hit and killed by a truck on a nearby highway. The First District's opinion – disapproved by the Florida Supreme Court – concluded that the plaintiff's case sounded in medical malpractice because it required proof of the adequate confinement of a psychiatric patient. Id. at 332-34. We note that the trial court in the instant case did not have the benefit of the Florida Supreme Court's decision in Townes when it adjudicated Hospital's motion to dismiss.

employees – including non-medical personnel – were so trained and qualified. Id. The nurse's use of the aggressive hold technique allegedly resulted in the patient falling and injuring her leg to the extent that the patient's leg required amputation. The patient sued the facility for ordinary negligence. Id. at 306.

The trial court determined that, because the patient's injuries arose out of the facility's rendering of medical care and services, the claim was a medical malpractice claim. The trial court granted the defendant's summary judgment motion because the patient had not provided the facility with the statutorily required pre-suit notice. Id. at 307-08. The Fifth District reversed, concluding that the aggressive technique employed by the nurse to restrain the patient was unrelated to treatment or diagnosis of any medical condition, and therefore the claim was one for ordinary negligence rather than medical malpractice. Id. at 308.

In approving the Fifth District, the Florida Supreme Court focused not only on the standard of care implicated by the claimant's allegations, but also upon the actual act causing the claimant's damages. The Townes court concluded that the aggressive hold caused the patient's injuries, and proof that the defendant's nurse negligently applied such hold "will not require testimony from a medical expert on the professional standard of care." Id. at 314. The Court concluded that the defendant's administering of the aggressive hold may have been required to control the patient, but was not part of an effort by staff to provide the patient with

9

any medical care or services. In sum, the Court determined that the plaintiff's claims sounded in ordinary negligence because, for a negligence claim to be a medical malpractice claim, "the act from which the claim arises must be *directly* related to medical care or services, which require the use of professional judgment or skill." Id. at 311 (emphasis supplied).

Whether the Court's holding in Townes will transform an admittedly grey area into one that is black and white remains uncertain. But the application of Townes to the instant case plainly requires reversal of the trial court's dismissal order. In this case, Simmons was attacked in his room by a fellow psychiatric patient. Hospital, citing the now disapproved First District decision in Shands,[8] argues that this unfortunate event implicated the medical malpractice standard of professional care – i.e., staff training and staff supervision of patients – thus giving rise to a medical malpractice claim. Townes instructs, however, that, because the act causing Simmons's injury did not *directly* result from Hospital's provision of medical care or services requiring staff's professional judgment or skill, Simmons's claim is not one for medical malpractice. Simmons's alleged injuries, like those suffered by the plaintiffs in Townes, Joseph, and Quintanilla, were not occasioned by acts directly related to medical care or treatment implicating an

---

[8] See footnote 7, *supra*.

10

inquiry into the medical malpractice standard of care articulated in section 766.102(1).

**IV. Conclusion**

Based on our *de novo* review of Simmons's amended complaint, we are unable to conclude that the act from which Simmons's claim arises – the attack on Simmons by Allen – is directly related to Hospital's medical care or services, which would require the use of professional judgment or skill. Therefore, we do not characterize Simmons's claims as ones for medical malpractice; and consequently, Simmons was not required to give Hospital pre-suit notice pursuant to section 766.106(2)(a).

Reversed and remanded.

11