DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**INDIAN RIVER MEMORIAL HOSPITAL, INC.,**
Petitioner,

v.

**ARLENE ANDERSON**, as Personal Representative of the
**ESTATE OF ZACHARY TAYLOR ANDERSON,** deceased,
Respondent.

No. 4D2024-2577

[February 19, 2025]

Petition for Writ of Certiorari to the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Cynthia L. Cox, Judge; L.T. Case No. 312024CA000178.

James D. DeChurch and Marc J. Schleier of Fowler White Burnett, P.A., Miami, for petitioner.

Ariel Lett of Lett Law, PLLC, Miami, and Joni Mosely of The Mosely Firm, P.A., Pembroke Pines, for respondent.

GROSS, J.

Indian River Memorial Hospital, Inc., petitions for certiorari review of an order denying its motion to dismiss a wrongful death case. The Hospital sought dismissal for the plaintiff's failure to comply with presuit requirements for a medical negligence action under the chapter 766, Florida Statutes. We grant the petition, concluding that the claim arose from the delivery of medical treatment or care, so the chapter 766 presuit requirements apply.

### *Background*

The decedent, Zachary Taylor Anderson, was admitted to the Hospital emergency room after he made deep cuts to his arms, legs, and body. The Hospital had him taken into custody for involuntary examination under the Baker Act. *See* § 394.463(1)(b)2., Fla. Stat. (2021) (allowing a mentally ill person to be taken into custody for involuntary examination where "[t]here is a substantial likelihood that without care or treatment the

person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior").

While unrestrained in a hospital bed in a hallway of the emergency room, decedent grabbed scissors from a nurse's pocket and ran towards some sheriff's deputies, who shot and killed him. The decedent's estate brought a wrongful death action against the Hospital, claiming negligence, vicarious liability, and gross negligence.

The complaint alleged that the Hospital was negligent in failing to protect decedent from himself and others and had a duty to prevent him from obtaining sharp objects. The plaintiff asserted that the nurse, who was aware decedent had been "Baker Acted," was negligent in leaving the scissors accessible. The negligence count alleged:

> 29. [The Hospital] had an affirmative duty to ensure its staff was properly trained so as to recognize and react to emergency medical situations and conditions.

> 30. [The Hospital] had an affirmative duty to provide adequate security measures to reduce the risks of Baker Acted invitees from harming themselves or others – to wit, access to sharp and hazardous object(s).

The plaintiff claimed that the nurse leaving the scissors in her pocket was a security lapse and a breach of the Hospital's duty "to ensure the safety and security of mental health patients." The plaintiff likened this to a premises liability case and alleges that the Hospital created a "dangerous condition."

The Hospital moved to dismiss. The trial court denied the motion and agreed with the plaintiff that the complaint had carefully avoided alleging medical negligence and relied on an ordinary negligence standard.

### *Legal Standards*

A writ of certiorari may issue where a trial court allows a medical negligence case to proceed without compliance with the presuit requirements of chapter 766. *Williams v. Oken*, 62 So. 3d 1129, 1135 (Fla. 2011).

Motions to dismiss are typically confined to the "four corners" of the face of the complaint. The essential facts are not disputed here. We review de novo the purely legal issue of whether the claim sounds in medical

negligence under the circumstances described in the complaint. *Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 308 (Fla. 2018).

To constitute a medical negligence claim, a cause of action must arise from medical, dental, or surgical diagnoses, treatment or care. *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 947 (Fla. 1994). "The alleged wrongful act must be directly related to the improper application of medical services to the patient and the use of professional judgment or skill." *Reeves v. N. Broward Hosp. Dist.*, 821 So. 2d 319, 322 (Fla. 4th DCA 2002).

In *Townes*, the Florida Supreme Court set the parameters for deciding whether a plaintiff's claim is one for "medical negligence" within the meaning of section 766.106(1)(a), Florida Statutes:

> In *Silva v. Southwest Florida Blood Bank, Inc.*, 601 So. 2d 1184 (Fla. 1992), we explained that the inquiry for determining whether a claim sounds in medical malpractice "is twofold: (1) whether the action arose out of 'medical . . . diagnosis, treatment, or care,' and (2) whether such diagnosis, treatment, or care was rendered by a 'provider of health care.'" *Id.* at 1186 (alteration in original). Additionally, we determined that the words "diagnosis," "treatment," and "care" should be "accorded their plain and unambiguous meaning," explaining that, "[i]n ordinary, common parlance, the average person would understand 'diagnosis, treatment, or care' to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness." *Id.* at 1187. Moreover, "in order to determine whether the presuit requirements of chapter 766 apply, we look to whether the plaintiff must rely upon the medical negligence standard of care as set forth in section 766.102(1)." *Integrated Health Care Servs., Inc. v. Lang–Redway*, 840 So. 2d 974, 980 (Fla. 2002).

242 So. 3d at 309.

Importantly, a plaintiff is entitled to the benefit of the doubt. "Because of the statutory restrictions and requirements that apply only to medical malpractice claims, any 'doubt' as to whether a claim is for ordinary negligence or medical malpractice should be 'generally resolved in favor of the claimant.'" *Id.* (citation omitted).

3

### *Discussion*

Here, as to the second prong, there is no dispute that the Hospital is a "health care provider" covered by chapter 766. § 766.202(4), Fla. Stat. (2021) (defining a "health care provider" as "any hospital or ambulatory surgical center as defined and licensed under chapter 395"). Chapter 766's presuit requirements apply to any claim of medical negligence against the Hospital.

> In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 766.202(4), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. . . .

§ 766.102(1), Fla. Stat. (2021).

This case is similar to *Indian River Memorial Hospital, Inc. v. Browne*, 44 So. 3d 237 (Fla. 4th DCA 2010), where the propriety of a defendant's conduct turned on an evaluation of a patient's medical condition. In *Browne*, the complaint alleged that a hospital orderly was negligent in leaving a patient, who had been admitted to the emergency room, unattended in a bed with the guardrail down. *Id.* at 238. The plaintiff claimed that the hospital had failed to monitor and protect the patient, who was a fall risk due to his condition. *Id.*

We granted certiorari and held that the claim sounded in medical negligence:

> The complaint alleges a medical negligence claim. The standard of care for the hospital's treatment of Browne is based in part on the hospital's evaluation of his medical condition when he was admitted to the emergency room. Another aspect of plaintiff's claim is that the hospital failed to implement adequate procedures to protect emergency room patients from falling from hospital beds. The adequacy of the hospital's procedures depends on the prevailing professional standard for managing and supervising those admitted to emergency rooms. These types of issues arise out of the rendering of, or the failure to render, medical care or services.

*Browne*, 44 So. 3d at 238–39; *see also S. Miami Hosp., Inc. v. Perez*, 38 So. 3d 809 (Fla. 3d DCA 2010) (similar); *Specialty Hosp.-Gainesville, Inc. v. Barth*, 277 So. 3d 201, 208 (Fla. 1st DCA 2019) (holding that, because the use of restraints required individualized orders each day from a doctor, the plaintiff's claims of improper application and long-term use of restraints sounded in medical negligence).

As in *Browne*, the claim here sounds in medical negligence because the plaintiff's argument is that the Hospital failed to adequately supervise the decedent or restrain him due to his medical condition. Importantly, the decedent had been admitted to the Hospital for examination and treatment when the Hospital and its staff allegedly acted negligently. The plaintiff's claim necessarily relies on the medical standard of care for a Baker Act patient. The plaintiff's claim is that the Hospital failed to recognize a risk created by the patient's medical condition.

The trial court's order denying the motion to dismiss disregarded all cases except those addressing negligence claims in the context of mental illness. The court relied primarily on *Townes*, but that case is distinguishable on its facts. In *Townes*, the plaintiff left a residential treatment facility. She was not receiving any treatment and began throwing rocks at staff and vandalized buildings. Non-medical facility staff restrained her using a specialized hold. The supreme court held that the hold was not done for treatment and did not require any medical judgment or skill. The hold was used by non-medical staff as a security measure outside the building. 242 So. 3d at 314.

Here, as in *Browne* and *Perez*, the decedent was recently admitted to the Hospital, which had a medical duty to supervise him during his care. The plaintiff's claim is not based on any acts that non-medical staff took as security measures. The claim is that the Hospital and its medical staff should have taken safety precautions due to decedent's medical condition, i.e., his mental illness and recent history of self-harm. This is akin to the failure to supervise and protect the patients at fall-risk in *Browne* and *Perez*. The "security lapse" at the heart of the plaintiff's claim is based on the Hospital failing to protect the decedent from a risk arising from his medical condition.

The plaintiff does not dispute that a claim alleging that the Hospital failed to restrain decedent to the bed or isolate him would sound in medical negligence. Here, any claim that decedent should have been restrained appears to rely on the professional standard of care. As the First District has explained:

5

Unlike in *Townes*, where non-medical staff were authorized to employ the TACT hold on a judgment call basis, the restraints here required individualized orders each day from a doctor. *See also* 42 C.F.R. § 482.13(e)(5) ("The use of restraint or seclusion must be in accordance with the order of a physician or other licensed independent practitioner who is responsible for the care of the patient . . . . ").

*Barth*, 277 So. 3d at 210.

The plaintiff includes the Hospital's failure to restrain decedent in the complaint's factual allegations but avoids any mention of this in the counts, where plaintiff asserts claims for simple negligence. The plaintiff tries to avoid *Barth, Browne,* and *Perez* by focusing on the scissors and alleging this was a security lapse, not an error in medical treatment. The trial court agreed with plaintiff that it had avoided the realm of medical negligence by excluding any mention of the lack of restraint from the negligence allegations in the counts and alleging only simple negligence.

A trial court should "parse the factual allegations from the legal conclusions alleged by the plaintiff." *Dr. Navarro's Vein Ctr. of Palm Beach, Inc. v. Miller,* 22 So. 3d 776, 778 (Fla. 4th DCA 2009). Whether this claim sounds in medical negligence depends on the factual allegations, not the cause of action alleged. "[W]hen the factual allegations belie the conclusory legal allegations, the trial court is permitted to, indeed must, apply the law to the well-pleaded factual allegations and decide the legal issue of whether the complaint sounds in simple or medical negligence." *Id.*

Here, access to the scissors alone did not directly cause the harm. Necessary to the plaintiff's negligence claim is that the Hospital failed to restrain or seclude decedent in the emergency room, which is what led to him getting shot and killed. The claim necessarily relies on the medical standard of care for a hospital treating a mentally ill patient at risk of self-harm and taken into custody for involuntary examination under the Baker Act.

The trial court believed that this case is similar to *Shands Teaching Hospital & Clinics, Inc. v. Estate of Lawson,* 175 So. 3d 327 (Fla. 1st DCA 2015), which the supreme court disapproved of in *Townes*. The psychiatric hospital patient in *Shands* took an employee's keys and badge and escaped the facility. *Id.* at 329. The patient was struck and killed by a truck. *Id.* The Florida Supreme Court ruled that the claim did not sound

6

in medical negligence because it "arose out of the hospital employee leaving her badge and keys unattended where the patient could access them, not out of any act directly related to medical care or services that required the use of professional judgment or skill." *Townes*, 242 So. 3d at 313.

*Shands* is distinguishable because the patient there was not actively undergoing evaluation and treatment. No medical decision was alleged to be negligent. Here, the decision of whether to restrain decedent after his admission could only have been made by a physician. The plaintiff's lack of adequate supervision claim likewise involves medical judgment and the professional standard of care for treating a patient taken into custody for examination under the Baker Act.

We conclude that this case is controlled by *Browne* and *Perez*. The Florida Supreme Court found *Browne* and *Perez* sufficiently distinguishable and neither approved nor disapproved of them in *Townes*. 242 So. 3d at 312 n.6 (concluding that they fell into a "gray area"). We have continued to apply *Browne* and *Perez* after *Townes*. *See Martin Mem'l Health Sys., Inc. v. Gorham*, 337 So. 3d 71, 72 (Fla. 4th DCA 2022) (alleging negligence for failing to provide a walker to a patient who fell at night trying to get to the bathroom); *N. Broward Hosp. Dist. v. Slusher*, 279 So. 3d 162, 163 (Fla. 4th DCA 2019) (alleging negligence in transferring a patient who was a fall risk from bed; nurse answered her cellphone and patient fell).

The plaintiff relies on two cases that involved inadequate security claims. *See Simmons v. Jackson Mem'l Hosp.*, 253 So. 3d 59 (Fla. 3d DCA 2018) (failure to provide security where psychiatric patient was attacked by another patient at a residential facility run by a hospital); *Joseph v. Univ. Behavioral, LLC*, 71 So. 3d 913 (Fla. 5th DCA 2011) (same).

These cases are distinguishable because no treatment was being provided at the time of the attacks.

In *Simmons*, the court explained that *Townes* requires "the act from which the claim arises must be *directly* related to medical care or services, which require the use of professional judgment or skill." 253 So. 3d at 63 (quoting *Townes*, 242 So. 3d at 311) (emphasis added). The plaintiff in *Simmons* was attacked by another patient while in his room. *Id.* at 60. "[B]ecause the act causing Simmons's injury did not directly result from Hospital's provision of medical care or services requiring staff's professional judgment or skill, Simmons's claim is not one for medical malpractice." *Id.* at 64 (emphasis in original).

7

The alleged negligence in *Simmons* and *Joseph* occurred during the patient's day-to-day living at a residential facility – not during any specific medical treatment. Here, the acts that caused injury are the Hospital's failure to restrain or properly supervise decedent just after he was admitted and taken into custody as a danger to himself under the Baker Act. The Hospital is a medical provider and was acting in that capacity while actively treating decedent for his mental illness and physical injuries.[1]

For these reasons, we grant the petition for writ of certiorari. The order denying the Hospital's motion to dismiss is quashed.

*Petition granted.*

KLINGENSMITH, C.J., and CIKLIN, J., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

---

[1] We note that, unlike the Hospital here, mental health facilities licensed under chapter 394 are not considered a "health care provider" for purposes of chapter 766. *Pierrot v. Osceola Mental Health, Inc.*, 106 So. 3d 491, 495 (Fla. 5th DCA 2013).